UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ultra International Music Publishing, LLC and Ultra Music Publishing Europe AG, <br><br> *Plaintiffs*, <br><br> v. <br><br> Sony Music Entertainment, AWAL Recordings Ltd., Ultra Records, LLC, 4ZA Music Ltd., Room Two Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony Music Entertainment Sweden AB, Sony Music Entertainment Switzerland GmbH, and Four Music Productions GmbH, <br><br> *Defendants*. | Case No. **24-9149** <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Ultra International Music Publishing, LLC and Ultra Music Publishing Europe AG (collectively, "Plaintiffs" or the "Ultra Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Sony Music Entertainment, AWAL Recordings Ltd., Ultra Records, LLC, 4ZA Music Ltd., Room Two Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony Music Entertainment Sweden AB, Sony Music

Entertainment Switzerland GmbH, and Four Music Productions GmbH (collectively, "Defendants," or the "Sony Defendants," or "SME"), allege as set forth below.

## NATURE OF THE CASE

1. The Ultra Plaintiffs are music publishing companies that own and exploit the copyrights in over 50,000 musical compositions (the "Ultra Compositions").[1] The Ultra Plaintiffs are widely acknowledged as being among the world's leading independent music publishers, having enjoyed almost two decades of commercial and critical acclaim. The Ultra Compositions have been recorded by superstar artists including Drake, Post Malone, Ed Sheeran, Madonna, Chris Brown, Kanye West, Rihanna, Katy Perry, Migos, Future, Gucci Mane, Kygo, Young Thug, Gunna, Cardi B, Nicki Minaj, and many others. The Ultra Compositions appear on hundreds of Gold, Platinum, and Multi-Platinum albums and singles. The Ultra Plaintiffs' songwriters have been nominated for over 100 Grammy Awards, and they have won multiple Grammy Awards.

2. Defendant Sony Music Entertainment is a subsidiary of the publicly traded Sony Group Corporation; in turn, each of the other Sony Defendants is a subsidiary, or otherwise an affiliate, of Sony Music Entertainment. The Sony Defendants are record labels that release and otherwise exploit sound recordings.

---

[1] Musical compositions and sound recordings "are separate works with their own distinct copyrights." *In re Cellco P'ship*, 663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009). A musical composition consists of rhythm, harmony, and melody, can be notated in sheet music, and can be performed by any musical performer with sufficient skill. *Rose v. Hewson*, No. 17-CV-1471, 2018 WL 626350, at *2 (S.D.N.Y. Jan. 30, 2018); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003), *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) *and aff'd*, 388 F.3d 1189 (9th Cir. 2004). A sound recording captures "the sound produced by . . . [a particular] performer's rendition of" a musical composition. *Newton*, 204 F. Supp. 2d at 1249-50.

3. For years, the Ultra Plaintiffs have been engaged in an audit of Sony Music Entertainment and its affiliates to uncover the Sony Defendants' underpayment and non-payment of royalties to the Ultra Plaintiffs and their songwriters for the Ultra Compositions (the "Audit"). The Sony Defendants admitted the Audit uncovered "credit errors and miscalculations of payments" to the Ultra Plaintiffs and their songwriters. The Sony Defendants wrongfully refused to pay the Ultra Plaintiffs and their songwriters the monies that the Audit revealed they are owed.

4. Given the Sony Defendants' refusal to pay the Ultra Plaintiffs' songwriters what they are owed, to protect those songwriters, the Ultra Plaintiffs no longer grant licenses to the Sony Defendants for the Ultra Compositions. The Sony Defendants know, and have known for years, that the Ultra Plaintiffs will not grant them licenses.

5. Despite their lack of licenses, the Sony Defendants engage in knowing, willful, and utterly inexcusable copyright infringement of the Ultra Compositions. Among other infringing acts, the Sony Defendants upload unlicensed sound recordings of Ultra Compositions (the "Infringing Sony Recordings") to digital service providers for on-demand streaming. Without authorization from Plaintiffs, the Sony Defendants also sell the Infringing Sony Recordings as digital downloads and in physical configurations (such as vinyl records). In further violation of Plaintiffs' rights in the Ultra Compositions, the Sony Defendants also wrongfully synchronize them in so-called "music videos" and "lyric videos." Although the Ultra Plaintiffs have repeatedly demanded in writing that the Sony Defendants cease and desist from their infringing activities, the Sony Defendants flatly and unequivocally refuse to do so.

6. The Sony Defendants routinely present themselves to the public as purported champions of intellectual property rights and crusaders against piracy. But the opposite is true. The Sony Defendants themselves are willfully committing blatant, ongoing, and massive piracy

3

of the Ultra Plaintiffs' intellectual property on a global scale, without justification or remorse.[2]

7.  The Sony Defendants' continuing, unlawful, infringing activity has caused and continues to cause substantial and irreparable harm to Plaintiffs. The Sony Defendants' unlawful conduct enriches them at Plaintiffs' expense and to the detriment of their copyrighted musical compositions. Through their conduct, the Sony Defendants are liable for the direct infringement of Plaintiffs' exclusive rights under copyright law to reproduce, adapt, distribute, and publicly perform their works. Sony Music Entertainment is also liable for the infringing acts of its subsidiaries and affiliates, the other Sony Defendants, under the well-established doctrine of vicarious copyright infringement, because Sony Music Entertainment profits from, and has the right and ability to control, the infringing activities of the other Sony Defendants.

## JURISDICTION AND VENUE

8.  This is a civil action in which Plaintiffs seek damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*.

9.  This Court has original subject matter jurisdiction over Plaintiffs' copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. This Court has supplemental jurisdiction over Plaintiffs' claim for tortious interference with contractual relations pursuant to 28 U.S.C. § 1367.

---

[2] Because the Sony Defendants recognize that they have no licenses for the Ultra Compositions, they wrongfully engaged in negotiations with multiple songwriters who are published by the Ultra Plaintiffs in an effort to obtain licenses directly from those songwriters. However, as the Sony Defendants are aware, these songwriters are contractually prohibited from granting such licenses to the Sony Defendants. This is because, under the Ultra Plaintiffs' contracts with these songwriters, the Ultra Plaintiffs have the exclusive right to issue such licenses. Through their improper direct negotiations with these songwriters, the Sony Defendants tortiously interfered with the Ultra Plaintiffs' contractual relations.

11. This Court has personal jurisdiction over Defendants because Sony Music Entertainment maintains its principal place of business within New York and because Defendants conduct systematic and continuous business in New York. This Court also has personal jurisdiction over Defendants because Defendants have committed a substantial part of the acts of infringement alleged in the Complaint within this district, and the harm from the infringement has been incurred, and continues to be incurred, in New York.

12. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and § 1400(a) because a substantial part of the acts of infringement, and other events and omissions complained of herein occur, or have occurred, in this district, and this is a district in which Defendants reside or may be found.

## THE PARTIES

13. Plaintiff Ultra International Music Publishing, LLC is a limited liability company organized under the laws of the State of New York, having its principal place of business at 137 West 25th Street, 10th Floor, New York, New York.

14. Plaintiff Ultra Music Publishing Europe AG is a corporate entity known as an *Aktiengesellschaft* organized under the laws of Switzerland.

15. Defendant Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York. Sony Music Entertainment is the parent company of the other Defendants. Sony Music Entertainment releases musical recordings under record label names, which include, but are not limited to, RCA Records, Columbia Records, and Epic Records.

16. Defendant AWAL Recordings Ltd. is a private limited company organized under the laws of the United Kingdom.

5

17. Defendant Ultra Records, LLC is a limited liability company organized under the laws of the State of Delaware that maintains offices at 25 Madison Avenue, New York, New York.

18. Defendant 4ZA Music Ltd. is a private limited company organized under the laws of the United Kingdom.

19. Defendant Room Two Recordings Ltd. is a private limited company organized under the laws of the United Kingdom.

20. Defendant B1 Recordings GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Germany.

21. Defendant Sony Music Entertainment Australia Pty Ltd. is proprietary limited company organized under the laws of Australia.

22. Defendant Sony Music Entertainment Germany GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Germany. It releases musical recordings under record label names which include Sony Music Germany, Epic Records Germany, Columbia Records Germany, NITRON, Jive Germany, and Gold League.

23. Defendant Secret Society is an entity of unknown form that describes itself as "a joint venture with Jive Germany, a division of Sony Music Entertainment Germany GmbH."

24. Defendant Liquid State is a joint venture of unknown corporate form; Sony Music Entertainment is a member of this joint venture.

25. Defendant Sony Music Entertainment UK Ltd. is a private limited company organized under the laws of the United Kingdom. It releases musical recordings under record label names which include Sony Music UK, RCA Records UK, Columbia Records UK, Robots + Humans, and Ministry of Sound Records.

6

26. Defendant Sony Music Entertainment Italy s.p.a. is a corporate entity known as a *Società per azioni* organized under the laws of Italy. It releases musical recordings under record label names which include Columbia Records Italy and Epic Records Italy.

27. Defendant Sony Music Entertainment France S.A.S. is a corporate entity known as a *Société par actions simplifiée* organized under the laws of France.

28. Defendant Sony Music Entertainment Sweden AB is a corporate entity known as an *Aktiebolag* organized under the laws of Sweden.

29. Defendant Sony Music Entertainment Switzerland GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Switzerland.

30. Defendant Four Music Productions GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Germany.

## FACTS APPLICABLE TO ALL COUNTS

31. For years, the Ultra Plaintiffs have been engaged in an audit of Sony Music Entertainment and its affiliates to uncover the Sony Defendants' underpayment and non-payment of royalties to the Ultra Plaintiffs and their songwriters (the "Audit"). SME has acknowledged that the Audit already uncovered "credit errors and miscalculations of payments" to the Ultra Plaintiffs and their songwriters. Nonetheless, SME has failed and refuses to pay the Ultra Plaintiffs and their songwriters the monies that the Audit reveals they are owed.

32. As a result of SME's inexcusable failure to properly pay royalties to the Ultra Plaintiffs and their songwriters, the Ultra Plaintiffs do not grant licenses to SME to exploit the Ultra Compositions.[3]

---

[3] At one point in time, SME had a Digital Product License Agreement with UIMP dated July 15, 2011. It provided SME with nonexclusive licenses for certain compositions published by UIMP. However, the agreement was terminated by UIMP on or about September 28, 2016.

7

33. Accordingly, the Sony Defendants lack the right or authority, without limitation, to: (a) reproduce sound recordings of the Ultra Compositions; (b) upload or otherwise distribute sound recordings of the Ultra Compositions to digital service providers for on-demand streaming; (c) sell recordings of the Ultra Compositions as digital downloads, vinyl records, compact discs, or in any other configuration; or (d) reproduce, distribute, upload, sell, or otherwise exploit music videos and lyric videos which contain synchronizations of the Ultra Compositions. Despite their lack of licenses, the Sony Defendants engage in all these activities, thereby infringing the copyrights in the Ultra Compositions.

34. On January 19, 2023, the Ultra Plaintiffs sent a letter to SME which reiterated to SME that: (a) Defendants lack licenses to exploit sound recordings of the Ultra Compositions, and (b) the Sony Defendants' exploitation of the Ultra Compositions constitutes copyright infringement.

35. The Ultra Plaintiffs' January 19, 2023 letter stated in part:

> . . . SME has repeatedly reproduced, synchronized, and distributed songs embodying Ultra Publishing's copyrighted musical compositions without a license, and in the process has treated those compositions as if they were free for the taking. They are not . . .
>
> SME must immediately cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of *any* of Ultra Publishing's copyrighted musical compositions for which it does not have a license, and/or authorizing others to do the same. Please confirm immediately that SME has ceased all such infringing conduct and activities, and that it will immediately inform any and all third party distributors that the continued distribution of those Ultra Publishing musical compositions constitute willful infringement.

(Emphasis in original.) Unfortunately, Defendants rebuffed this demand.

36. In their January 19, 2023 letter, the Ultra Plaintiffs further demanded that SME "identify each copyrighted musical composition owned or controlled by Ultra Publishing that

8

SME has used or exploited without a license or authorized others to use or exploit . . . ." SME also rebuffed this demand.

37. Plaintiffs sent numerous follow-up letters to SME in which Plaintiffs reiterated their demands that Defendants: (a) cease exploiting the Ultra Compositions; and (b) identify which Ultra Compositions have been exploited, and continue to be exploited, by Defendants. These demands were rebuffed by Defendants.

38. Plaintiffs also demanded that, to the extent Defendants claim to have license(s) that would permit them to exploit Ultra Compositions, that Defendants provide such alleged license(s) to Plaintiffs. Defendants also have failed to comply with this demand.

39. To date, Defendants continue to willfully infringe Plaintiffs' copyrights in the Ultra Compositions. These acts of infringement have included, but are not limited to, Defendants' reproduction and distribution of sound recordings of the Ultra Compositions; Defendants' uploading of unauthorized recordings of the Ultra Compositions for on-demand streaming; Defendants' sale of permanent digital downloads of those recordings; Defendants' sale of physical configurations of those recordings; and Defendants' unauthorized synchronizations of the Ultra Compositions in music videos and lyric videos.

40. Because Defendants refuse to take responsibility for—let alone cease—their misconduct, Plaintiffs have been forced to commence this litigation to enforce their rights and hold Defendants accountable.

41. **Exhibit A** to this Complaint contains a non-exhaustive list of certain of the Ultra Compositions which, notwithstanding Defendants' bad-faith failure and refusal to provide information regarding their exploitations, the Ultra Plaintiffs believe in good faith are being infringed by Defendants. The Compositions on Exhibit A are the subject of this lawsuit.

42. This lawsuit is just the first of numerous copyright-infringement actions that the Ultra Plaintiffs intend to bring against Defendants. As Plaintiffs' investigation of Defendants' wrongful conduct continues, the Ultra Plaintiffs intend to assert more copyright infringement claims against Defendants for additional Ultra Compositions that Defendants are unlawfully exploiting without a license.

## CLAIMS FOR RELIEF

### COUNT I – Direct Copyright Infringement

**(Against All Defendants)**

43. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 42 as if fully set forth herein.

44. Defendants have engaged, and continue to engage, in the unauthorized reproduction, adaptation, distribution, and public performance of various copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including those copyrighted works listed in Exhibit A. The foregoing activity constitutes direct infringement by Defendants in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

45. Each of the Defendants is liable for their role in the "distribution chain" at issue, including: (i) involvement in the creation of unauthorized infringing works; (ii) permitting and/or directing other entities to distribute or monetize any unauthorized infringing works; (iii) permitting and/or directing the public performance of unauthorized infringing works on streaming services; (iv) permitting and/or directing the creation of additional infringing works such as accompanying music videos and lyric videos; and (v) the provision of any infringing sound recording services.

46. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

47. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

48. Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive rights under copyright.

## COUNT II – Vicarious Copyright Infringement

### (Against Sony Music Entertainment)

49. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 48 as if fully set forth herein.

50. Defendants AWAL Recordings Ltd., Ultra Records, LLC, 4ZA Music Ltd., Room Two Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony Music Entertainment Sweden AB, Sony Music Entertainment Switzerland GmbH, and Four Music Productions GmbH (the "SME Subsidiaries") have reproduced,

11

distributed, adapted, and publicly performed, and continue to reproduce, distribute, adapt, and publicly perform, without authorization, copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including those copyrighted works listed in Exhibit A. The foregoing activity constitutes direct infringement by the SME Subsidiaries in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

51. Defendant Sony Music Entertainment is liable as a vicarious copyright infringer for the direct infringement of the SME Subsidiaries as described above. Sony Music Entertainment has the right and ability to supervise and control the infringing activities that occur, and at all relevant times, Sony Music Entertainment has derived direct and substantial financial benefits from the infringement of Plaintiffs' copyrighted works occurring through the acts of the SME Subsidiaries. Sony Music Entertainment has knowledge of, and substantial, continuing involvement with, the infringing acts of the SME Subsidiaries.

52. As a result, Sony Music Entertainment is vicariously liable for the unlawful infringement of Plaintiffs' copyrighted works by the SME Subsidiaries, including those listed in Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

53. The infringement of Plaintiffs' rights in each of their copyrighted works constitutes a separate and distinct act of infringement.

54. Sony Music Entertainment's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

55. As a direct and proximate result of Sony Music Entertainment's infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c),

in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

56. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Sony Music Entertainment's profits from infringement, as will be proven at trial. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

57. Sony Music Entertainment's conduct is causing, and unless enjoined by this Court, will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive rights under copyright.

## COUNT III – Tortious Interference with Contractual Relations

### (Against Sony Music Entertainment, Sony Music Entertainment France S.A.S., and Sony Music Entertainment Germany GmbH)

58. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 57 as if fully set forth herein.

59. Because the Sony Defendants recognize that they have no licenses for the Ultra Compositions, they wrongfully engaged in direct negotiations with certain songwriters who are published by the Ultra Plaintiffs in an attempt to obtain licenses directly from those songwriters for compositions they wrote.

60. Songwriters whom the Sony Defendants may have improperly contacted for this purpose include the songwriters professionally known as Flavour, Allie Crystal, Purple Disco Machine, and Rudimental.

61. The Sony Defendants knew that these songwriters were contractually prohibited from granting such licenses to the Sony Defendants. Specifically, the Sony Defendants knew that, under the Ultra Plaintiffs' contracts with these songwriters, the Ultra Plaintiffs have the exclusive right to issue such licenses.

62. Through their improper direct negotiations with songwriters, the Sony Defendants tortiously interfered with the Ultra Plaintiffs' contractual relations by inducing the songwriters to breach their contracts with the Ultra Plaintiffs.

63. The Ultra Plaintiffs have suffered damages as a result of the foregoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment from this Court against Defendants as follows:

a. For a declaration that Defendants have willfully infringed musical works owned and/or controlled by Plaintiffs in violation of the Copyright Act;

b. For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Defendants' willful violations of Plaintiffs' rights under the Copyright Act; or, in the alternative, at Plaintiffs' election, Plaintiffs' actual damages pursuant to 17 U.S.C. § 504(b), including Defendants' profits from infringement, in an amount to be proven at trial; in all events, in an amount no less than $20,000,000 (Twenty Million Dollars);

c. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiffs' copyrights and/or other rights in the musical works, including a permanent injunction requiring that Defendants and their officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing or materially contributing to or

participating in the infringement of any of Plaintiffs' exclusive copyright rights, including without limitation in the musical works listed in Exhibit A;

   d. For the disgorgement of all profits received by Defendants for the unlawful diversion of earnings from Plaintiffs' musical works for which Plaintiffs have exclusive rights and have provided no licenses to Defendants;

   e. For an award of damages on Plaintiffs' claim for tortious interference with contract, in an amount to be determined at trial.

   f. For an award of Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

   g. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

   h. For such other relief and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims and issues that are so triable.

Dated: New York, New York
   November 29, 2024

                 Respectfully submitted,

                 /s/ Jeffrey M. Movit
                 Jeffrey M. Movit

                 CHAUDHRYLAW PLLC
                 147 West 25th Street, 12th Floor
                 New York, NY 10001
                 Tel: (212) 785-5550
                 jeff@chaudhrylaw.com