**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ULTRA INTERNATIONAL MUSIC PUBLISHING, LLC and ULTRA MUSIC PUBLISHING EUROPE AG,<br><br>Plaintiffs,<br><br>v.<br><br>SONY MUSIC ENTERTAINMENT, AWAL RECORDINGS LTD., ULTRA RECORDS, LLC, 4ZA MUSIC LTD., ROOM TWO RECORDINGS LTD., B1 RECORDINGS GMBH, SONY MUSIC ENTERTAINMENT AUSTRALIA PTY LTD., SONY MUSIC ENTERTAINMENT GERMANY GMBH, SECRET SOCIETY, LIQUID STATE, SONY MUSIC ENTERTAINMENT UK LTD., SONY MUSIC ENTERTAINMENT ITALY S.P.A., SONY MUSIC ENTERTAINMENT FRANCE S.A.S., SONY MUSIC ENTERTAINMENT SWEDEN AB, SONY MUSIC ENTERTAINMENT SWITZERLAND GMBH, and FOUR MUSIC PRODUCTIONS GMBH,<br><br>Defendants. | Case No. 1:24-CV-9149 (RA) (GS) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS SONY MUSIC ENTERTAINMENT'S AND ULTRA RECORDS, LLC'S
## MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ...................................................................................... 4

I.     THE HISTORY OF DEALINGS BETWEEN PLAINTIFFS AND
DEFENDANTS ............................................................................ 4

II.    PLAINTIFFS' ALLEGATIONS IN THE COMPLAINT ................... 5

ARGUMENT ........................................................................................... 7

I.     LEGAL STANDARD .................................................................... 7

II.    PLAINTIFFS FAIL TO PLEAD CLAIMS FOR DIRECT
INFRINGEMENT ......................................................................... 8

       A.     Plaintiffs Fail to Allege How, When or Where the Alleged
Infringements Took Place ................................................... 9

       B.     Plaintiffs Engage in Impermissible Group Pleading ............... 12

       C.     Plaintiffs Fail to Identify All of the Works at Issue ............... 13

       D.     Plaintiffs Fail to Plead That All Works at Issue Have Been
Registered for Copyright ..................................................... 14

III.   PLAINTIFFS' VICARIOUS INFRINGEMENT CLAIM AGAINST
SME MUST BE DISMISSED ...................................................... 15

       A.     Plaintiffs Have Not Alleged a Predicate Direct Infringement ... 15

       B.     The Complaint Does Not Allege Any Facts Demonstrating that
SME Has Control Over or Directly Financially Benefits From
Any Infringing Conduct ...................................................... 17

       C.     Plaintiffs' Vicarious Infringement Claim Impermissibly
Duplicates Their Direct Infringement Claims .......................... 18

IV.   PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM AGAINST
SME MUST BE DISMISSED ...................................................... 19

       A.     Plaintiffs' Tortious Interference Claim Is Preempted by the
Copyright Act ..................................................................... 19

       B.     Plaintiffs Fail to Plead a Single Element of Their Tortious
Interference Claim ............................................................... 21

             1.     Plaintiffs Have Not Identified Any Third-Party Contracts
That Were Allegedly Breached .................................... 22

             2.     Plaintiffs Have Not Pled Any Facts Showing That SME
Knew About The Allegedly Relevant Provisions of
UIMP's Songwriter Contracts ..................................... 22

3.      Plaintiffs Have Not Alleged Improper Interference by SME ...................................................................................23

4.      Plaintiffs Have Not Pled That Any Breach Occurred .................24

5.      Plaintiffs Have Not Pled That They Suffered Any Damage .......................................................................................25

CONCLUSION .......................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*A.V.E.L.A., Inc. v. The Estate of Marilyn Monroe, LLC*,
    No. 12 Civ. 4828 (KPF), 2018 U.S. Dist. LEXIS 35536
    (S.D.N.Y. Mar 5, 2018) ........................................................................................22

*Am. Movie Classics Co. v. Turner Entm't Co.*,
    922 F. Supp. 926 (S.D.N.Y. 1996) .....................................................................21

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*,
    No. 14 Civ. 09494 (CM), 2015 U.S. Dist. LEXIS 162515
    (S.D.N.Y. Dec. 1, 2015) ......................................................................................22

*Arista Records LLC v. Lime Grp. LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011) ......................................................... 15-16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................8, 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ...................................................................................7

*Balder v. Sarandon*,
    No. 22-CV-06401 (JLR)(SN), 2023 U.S. Dist. LEXIS 233333
    (S.D.N.Y. Dec. 18, 2023) ....................................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................7, 8

*Bill Diodato Photo. LLC v. Avon Products, Inc.*,
    12 Civ. 847 (RWS), 2012 U.S. Dist. LEXIS 110988 (S.D.N.Y. Aug. 7, 2012) .....................15

*Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004) ...............................................................................20

*BroadVision Inc. v. Gen. Elec. Co.*,
    No. 08 Civ. 1478 (WHP), 2009 U.S. Dist. LEXIS 45862
    (S.D.N.Y. May 5, 2009) ................................................................................17, 18

*Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*,
    632 F. Supp. 3d 471 (S.D.N.Y. 2022) ................................................................25

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008) ...............................................................................10

*Cole v. John Wiley & Sons*,
No. 11Civ. 2090 (DF), 2012 U.S. Dist. LEXIS 108612
(S.D.N.Y. Aug. 1, 2012) .............................................................................10, 11, 14

*Cortez v. Stillwell Ready-Mix & Bldg. Materials, LLC*,
No. 20-cv-7775, 2022 U.S. Dist. LEXIS 7345 (S.D.N.Y. Jan. 13, 2022) ........................ 25-26

*Espire ADS LLC v. Tapp Influencers Corp.*,
655 F. Supp. 3d 223 (S.D.N.Y. 2023)...................................................................25

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
896 F. Supp. 2d 223 (S.D.N.Y. 2012)...................................................................14

*Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank*,
552 F. App'x 13 (2d Cir. 2014) ..........................................................................24

*Finley v. Giacobbe*,
79 F.3d 1285 (2d Cir. 1996).............................................................................22

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019).....................................................................................14

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
No. 96-cv-1103, 1996 U.S. Dist. LEXIS 18653 (S.D.N.Y. Dec. 17, 1996) .....................11, 16

*Harper & Row, Publrs., Inc. v. Nation Enters.*,
723 F.2d 195 (2d Cir. 1983)............................................................................21

*Hartmann v. Popcornflix.com LLC*,
690 F. Supp. 3d 309 (S.D.N.Y. 2023)...............................................................15, 18

*Heller v. Bedford Cent. Sch. Dist.*,
144 F. Supp. 3d 596, 612 (S.D.N.Y. 2015)...............................................................8

*Hutson v. Notorious B.I.G., LLC*,
No. 14-cv-2307 (RJS), 2015 U.S. Dist. LEXIS 170733
(S.D.N.Y. Dec. 21, 2015)................................................................................16

*Jacobs v. Carnival Corp.*,
No. 06 Civ. 0606 (DAB), 2009 U.S. Dist. LEXIS 31374
(S.D.N.Y. Mar. 25, 2009) ......................................................................... *passim*

*K&G Elec. Motor & Pump Corp. v. Ingersoll-Rand Co.*,
No. 18-cv-2308 (DRH)(SIL), 2019 U.S. Dist. LEXIS 147498
(E.D.N.Y. Aug. 27, 2019)................................................................................26

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992) .........................................................................15

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)........................................................................25

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)..........................................................................4

*Lambertini v. Fain*,
    No. 12-CV-3964 (DRH)(ARL), 2014 U.S. Dist. LEXIS 131390
    (E.D.N.Y. Sept 17. 2014)............................................................................10

*Lennon v. Seaman*,
    No. 99 Civ. 2664 (LBS), 2002 U.S. Dist. LEXIS 1237
    (S.D.N.Y. Jan. 28, 2002)............................................................................10

*Lepore v. NL Brand Holdings LLC*,
    No. 16-cv-08115 (GBD), 2017 U.S. Dist. LEXIS 163035
    (S.D.N.Y. Sept. 28, 2017)...........................................................................13

*Lindberg v. Dow Jones & Co., Inc.*,
    No. 20-cv-8231 (LAK), 2022 U.S. Dist. LEXIS 47100
    (S.D.N.Y. Mar. 16, 2022)............................................................................25

*Lixenberg v. Complex Media, Inc.*,
    No. 22-cv-354, 2023 U.S. Dist. LEXIS 4510 (S.D.N.Y. Jan. 10, 2023) ................18

*Lopez v. Bonanza.com, Inc.*,
    No. 17-Civ-8493 (LAP), 2019 U.S. Dist. LEXIS 170715
    (S.D.N.Y. Sep. 30, 2019)............................................................................10

*Mayimba Music, Inc. v. Sony Corp. of Am.*,
    No. 12 Civ. 1094 (AKH), 2014 U.S. Dist. LEXIS 152051
    (S.D.N.Y Aug. 19, 2014).............................................................................18

*Medtech Prods. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)...........................................................23

*Netzer v. Continuity Graphic Assocs.*,
    963 F. Supp. 1308 (S.D.N.Y. April 8, 1997) ...................................................21

*New London Assocs., LLC v. Kinetic Soc. LLC*,
    384 F. Supp. 3d 392 (S.D.N.Y. 2019).....................................................18, 20

*Noland v. Janssen*,
    No. 17-CV-5452 (JPO), 2019 U.S. Dist. LEXIS 37781
    (S.D.N.Y. March 8, 2019)......................................................................16, 17

*Palmer Kane LLC v. Scholastic Corp.*,
No. 12 CIV. 3890 TPG, 2014 U.S. Dist. LEXIS 44881
(S.D.N.Y. Mar. 31, 2014) .......................................................................................14

*Palmer Kane LLC v. Scholastic Corp.*,
No. 12-CV-3890, 2013 U.S. Dist. LEXIS 27196 (S.D.N.Y. Feb. 26, 2013).........................10

*Plusgrade L.P. v. Endava Inc.*,
No. 21-cv-1530 (MKV), 2023 U.S. Dist. LEXIS 39114
(S.D.N.Y. March 8, 2023).......................................................................................13

*Prospect Funding Holdings, LLC v. Vinson*,
256 F. Supp. 3d 318 (S.D.N.Y. 2017).......................................................................24

*Qube Films, Ltd. v. Padell*,
No. 13-cv-8405, 2014 U.S. Dist. LEXIS 111595 (S.D.N.Y. Aug. 12, 2014).........................23

*Ranieri v. Adirondack Dev. Grp.*,
164 F. Supp. 3d 305 (N.D.N.Y. 2016) .......................................................................21

*Red Apple Media v. Batchelor*,
636 F. Supp. 3d 468 (S.D.N.Y, 2022).......................................................................21

*Richards v. Warner Music Grp.*,
No. 22-cv-6200, 2024 U.S. Dist. LEXIS 175192 (S.D.N.Y. Sept. 26, 2024) .........................16

*Roberts v. Keith*,
No.04-CV-10079 (LAP), 2009 U.S. Dist. LEXIS 101412
(S.D.N.Y. Oct. 23, 2009) .......................................................................................12

*Sibanda v. Elison*,
No. 23-CV-5752 (JMF), 2024 U.S. Dist. LEXIS 144367
(S.D.N.Y. Aug 14, 2024).......................................................................................15

*Smith v. Weeknd*,
No. CV 19-2507 PA, 2019 U.S. Dist. LEXIS 221922
(C.D. Cal. Aug. 23, 2019) .......................................................................................19

*Sound & Color, LLC v. Smith*,
No. 2:22-cv-01508-AB, 2023 U.S. Dist. LEXIS 34402
(C.D. Cal. Feb. 28, 2023).......................................................................................19

*State St. Glob. Advisors Tr. Co. v. Visbal*,
431 F. Supp. 3d 322 (S.D.N.Y. 2020)..........................................................11, 17, 19

*Taboola, Inc. v. Ezoic Inc.*,
No. 17 Civ. 9909 (PAE)(KNF), 2020 U.S. Dist. LEXIS 67934
(S.D.N.Y. Apr. 17, 2020)..................................................................................23, 26

*Talon Prof'l Servs., LLC v. Centerlight Health Sys.*,
No. 20 Civ. 78 (PAE), 2021 U.S. Dist. LEXIS 61219
(S.D.N.Y. Mar. 30, 2021) ................................................................................23

*The Paul Rudolph Found. v. Paul Rudolph Heritage Found.*,
No. 20-cv-8180 (CM), 2022 U.S. Dist. LEXIS 162451
(S.D.N.Y. Sept. 8, 2022) ............................................................................9, 11

*Trombetta v. Novocin*,
414 F. Supp. 3d 625 (S.D.N.Y. 2019)...............................................................9

*Ultra Records, LLC v. Ultra International Music Publishing, LLC*,
No. 22-cv-9667 (S.D.N.Y.).................................................................................5

*Vargas v. Viacom Int'l*,
No. 18 Civ. 474 (LLS), 2018 U.S. Dist. LEXIS 204474
(S.D.N.Y. Nov. 30, 2018) ............................................................................20, 21

*Watson v. Compagnie Financiere Richemont SA*,
No-18-Civ-547, 2020 U.S. Dist. LEXIS 154709 (S.D.N.Y. Aug. 25, 2020) .........................12

*Yamashita v. Scholastic, Inc.*,
No. 16-cv-9201, 2017 U.S. Dist. LEXIS 2173 (S.D.N.Y. Jan. 5, 2017) ................................11

**Statutes and Rules**

17 U.S.C. § 102(a)(2)....................................................................................................20

17 U.S.C. § 106....................................................................................................9, 20

Defendants Sony Music Entertainment ("SME") and Ultra Records, LLC ("Ultra Records", and together with SME, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims in the Complaint of Plaintiffs Ultra International Music Publishing, LLC ("UIMP") and Ultra Music Publishing Europe AG ("UMPE", and together with UIMP, "Plaintiffs") asserted against Defendants.

## PRELIMINARY STATEMENT

This copyright infringement action is an ill-conceived effort by Plaintiffs—two music publishing companies owned by Patrick Moxey—to retaliate against Defendants for pursuing claims based on Moxey's unauthorized use of the ULTRA trademark after SME bought Moxey's share of Ultra Records from him in 2021. In an attempt to gain settlement leverage over Defendants, Plaintiffs filed this action on the eve of trial in the trademark lawsuit.

Plaintiffs try to justify that nefarious timing by claiming this lawsuit stems from an audit of the music publishing royalties that SME paid to Plaintiffs. (Cmplt. ¶¶ 3-4, 31-32.) Yet, that audit—which involved payments made by SME to Plaintiffs through *2016*—was settled in principle years ago for a small fraction of the amount claimed, and Plaintiffs never pursued those audit claims any further. The parties continued working together after the audit was settled, with SME paying publishing royalties on the musical compositions that were the subject of the audit without objection from Plaintiffs, and working to license and pay the corresponding publishing royalties for well over a thousand other compositions owned in whole or in part by Plaintiffs. Plaintiffs' own conduct demonstrated that the audit had been resolved, as they subsequently communicated to SME the shares owned by songwriters with respect to numerous musical

compositions that they controlled, in order to facilitate SME's exploitation of those compositions and SME's payment of publishing royalties.

SME's licensing practices are both appropriate and entirely consistent with the licensing practices of every other leading record label that releases new sound recordings, including record labels that Moxey himself controlled in the past and currently owns. Moreover, Plaintiffs' own songwriters and producers continue to write songs and collaborate with SME artists with the intention and expectation that the resulting sound recordings incorporating the underlying musical compositions will be commercially released—underscoring the obvious question of whether Plaintiffs' attempted boycott of SME is in their songwriters' best interest. This action was not brought as Plaintiffs claim in their Complaint to "protect [their] songwriters" (Cmplt. ¶ 4), but to exact revenge and exert settlement pressure on Defendants.

Plaintiffs' improper motivation in filing this action is underscored by the slapdash manner in which they prepared their Complaint. Plaintiffs do not allege any facts to support their copyright infringement claims, instead resorting to boilerplate language that merely recites the legal elements of those claims. Although Plaintiffs purport to assert infringement of "over 50,000" music works and they submit a "non-exhaustive" list of 100 of those works, they fail to allege (i) the identities of the vast majority of those works, (ii) which of the Plaintiffs controls each of those works, (iii) which of the sixteen defendants Plaintiffs chose to sue are responsible for infringements of the vast majority of those works, (iv) what actions any such defendant took to infringe, (v) when those alleged infringements occurred, or (vi) whether those alleged infringements even occurred in the United States such that they may be adjudicated here.

Instead, Plaintiffs lump together all of the defendants—which Plaintiffs admit are separate legal entities located in various countries around the world—resting their claims on the bald

assertion that "[e]ach of the Defendants is liable for their role in" an unspecified "distribution chain." As for the purportedly infringing conduct, Plaintiffs offer only generalized assertions as to the "creation of unauthorized works," without providing any concrete facts supporting those assertions. These failures make it impossible for Defendants to discern the claims that are being brought against them, and mandates the dismissal of Plaintiffs' copyright infringement claims.

Plaintiffs' vague allegations also necessitate the dismissal of their vicarious infringement claim against SME. All Plaintiffs allege is that SME "profits from, and has the right and ability to control, the infringing activities of the other [] Defendants", which merely recites the legal elements of a vicarious infringement claim, and is insufficient to survive a motion to dismiss. The unsupported allegation that the other defendants are SME's "subsidiaries" or "affiliates" does not plead SME's requisite control and direct financial gain from the alleged infringements by those other entities, as it is well settled that a parent/subsidiary relationship, without more, does not support a vicarious infringement claim. Furthermore, the Complaint seemingly asserts that SME should be both directly and vicariously liable for the same alleged infringements, which is a legal impossibility.

Finally, Plaintiffs assert a claim for tortious interference with contract, which is premised on SME's purported outreach to songwriters in an attempt to obtain licenses for those songwriters' compositions, which supposedly interfered with Plaintiffs' exclusive rights to license the compositions themselves. Not only is this claim contradicted by Plaintiffs' previous complaints that SME had *not* sought to obtain licenses from these songwriters, it also fails as a matter of law. Because Plaintiffs seek to vindicate their purported rights to exploit and distribute musical compositions—the same rights conferred on copyright owners—this claim is preempted by the Copyright Act. Even if that were not the case, Plaintiffs' allegations are as deficient as for their

other claims.  In fact, Plaintiffs fail to allege a single element of their tortious interference with contract claim, including (i) the material terms of the contracts at issue, (ii) that SME was aware of those terms and intended to cause their breach, (iii) that any such contracts were actually breached by SME's "contact" and "negotiations" with the songwriters, or (iv) that Plaintiffs suffered any resulting damages.

This Court should see this action for the ploy it is, and dismiss each of Plaintiffs' inadequately pled and fatally flawed claims asserted against Defendants.

## BACKGROUND

## I.    THE HISTORY OF DEALINGS BETWEEN PLAINTIFFS AND DEFENDANTS[1]

Patrick Moxey is the founder of both Ultra Records (a recorded music company, sometimes known as a record "label") as well as UIMP (a music publishing company that owns or controls music compositions, *i.e.*, the music and lyrics of a song).  Although UIMP licensed its compositions to be included in records released by Ultra Records, the two are separate entities.

In 2012, SME purchased a 50% interest in Ultra Records from Moxey.  Through that transaction, Moxey (through his remaining 50% interest in Ultra Records) gained access to SME's industry-leading marketing and promotional resources, while SME received an ownership interest in the Ultra record label.  While the venture was in place, Moxey's UIMP conducted a routine audit of SME's payment of royalties to UIMP for the 2012-2016 time period.  Though the parties disagreed on the audit findings, they reached a settlement of the audit claims in 2019, with UIMP's

---

[1] While the Court's inquiry on this motion is limited to the allegations contained in the Complaint and documents incorporated by reference therein, a brief history of the relationship of the parties is included to provide relevant context, and the Court can take judicial notice of the public filings in the trademark litigation between the parties.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

representative confirming "Yes, we are done!"  UIMP continued to pitch its compositions for use by SME and its artists, while SME continued to pay royalties to UIMP and its songwriters.

In 2021, SME acquired Moxey's remaining 50% share in Ultra Records, making it a wholly-owned subsidiary of SME.  As part of that transaction, in which SME paid millions of dollars to Moxey, he lost any right to continue to use the ULTRA trademark.  Moxey nevertheless continued to operate UIMP under the ULTRA name without SME's authorization, which forced SME to commence a trademark infringement action to protect its rights in the ULTRA mark.  *See Ultra Records, LLC v. Ultra International Music Publishing, LLC*, No. 22-cv-9667 (S.D.N.Y.) ("Trademark Litig.").

In November 2024, mere days before the trial in the trademark litigation began, UIMP and its Swiss affiliate commenced this copyright infringement action, using the long-since resolved audit as a pretext.  (Cmplt. ¶¶ 3-4, 31-32.)  Undaunted by Plaintiffs' pressure tactic, SME tried its trademark claims to a jury, which returned a verdict in December 2024 finding UIMP liable for trademark dilution and breach of contract, and finding that UIMP had acted in bad faith. (Trademark Litig., Dkt. 197.)  A final judgment in that case is pending.

## II.    PLAINTIFFS' ALLEGATIONS IN THE COMPLAINT

Plaintiffs assert copyright infringement claims against SME and Ultra Records, along with fourteen other entities that reside outside the United States (the "Foreign Defendants").  Plaintiffs allege that the Foreign Defendants are alternatively "subsidiaries" or "affiliates" of SME, though they admit that each of SME, Ultra Records and the Foreign Defendants are separate legal entities. (Cmplt. ¶¶ 2, 15-30.)

Although Plaintiffs attach to their Complaint a "non-exhaustive" list of 100 musical compositions (*id.* ¶ 41, Ex. A), they allege that defendants infringed a total of "over 50,000 musical compositions" which they define as the "Ultra Compositions."  (*Id.* ¶ 1.)  Plaintiffs claim

defendants infringed those myriad of works by "(a) reproduc[ing] sound recordings of the Ultra Compositions; (b) upload[ing] or otherwise distribut[ing] sound recordings of the Ultra Compositions to digital service providers for on-demand streaming; (c) sell[ing] recordings of the Ultra Compositions as digital downloads, vinyl records, compact discs, or in any other configuration; or (d) reproduc[ing], distribut[ing], upload[ing], sell[ing], or otherwise exploit[ing] music videos and lyric videos which contain synchronizations of the Ultra Compositions." (*Id.* ¶ 33.)

However, the Complaint does not identify any instances of such reproductions, uploading, selling of downloads or physical records, or exploitations in video by any particular defendant. The Complaint is also silent as to when and where such alleged infringements occurred, which is particularly salient here given the longstanding relationship between the parties and the fact that most of the defendants are foreign entities operating outside of the United States. Instead, the Complaint simply states that "[e]ach of the Defendants is liable for their role in the 'distribution chain' at issue," which resulted in "the creation of unauthorized infringing works," "permitting and/or directing the creation of additional infringing works such as accompanying music videos and lyric videos," and "the provision of any infringing sound recording services." (Cmplt. ¶ 45.)[2]

Plaintiffs also contend that SME is vicariously liable for the unspecified infringements, simply because the other defendants are alleged to be "a subsidiary, or otherwise an affiliate, of

---

[2] Although Plaintiffs' Complaint should be dismissed based solely on their failure to allege the elements of their claims, it should be noted that SME obtains licenses or relies on third-party licenses for the musical compositions contained in the records it releases in the United States—including compositions allegedly owned by Plaintiffs—in a variety of ways, including but not limited to direct licenses from rightsholders for which SME has paid substantial royalties, "controlled composition" clauses in SME's agreements with its singer-songwriter artists, licenses under 17 U.S.C. § 115 issued by the Mechanical Licensing Collective and by The Harry Fox Agency, and licenses from ASCAP, BMI and other performing rights organizations.

[SME]," and because SME allegedly "profits from, and has the right and ability to control" the allegedly infringing conduct of the other defendants. (*Id.* ¶ 7.) The Complaint offers no facts supporting those conclusory allegations, or any further details as to the relationships among the defendants. Nor does the Complaint differentiate between the alleged infringements for which Plaintiffs seek to hold SME directly liable from those for which Plaintiffs seek to hold SME vicariously liable.

Plaintiffs separately allege that SME tortiously interfered with Plaintiffs' unspecified agreements with songwriters by "contacting" and engaging in "negotiations" with a handful of those writers "in an attempt to obtain licenses directly from those songwriters for compositions they wrote." (Cmplt. ¶ 59.)[3] Critically, the Complaint does not allege that any such licenses were granted to SME, or that, if they were, any particular contracts to which Plaintiffs are a party were breached. (*Id.* ¶¶ 61-62.)

## ARGUMENT

### I.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This requires that the complaint contain enough factual content to allow the court to draw the inference that the defendant is liable for the

---

[3] The contradiction of Plaintiffs faulting SME for supposedly willfully not obtaining licenses to exploit compositions created by Plaintiffs' writers, and then simultaneously complaining that SME and Ultra Records reached out to those writers to obtain licenses, should not be lost on the Court.

misconduct alleged. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In assessing the adequacy of a complaint, "the Court accepts as true all well-pled factual allegations, but does not credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 612 (S.D.N.Y. 2015), *aff'd*, 665 F. App'x 49 (2d Cir. 2016) (quoting Iqbal, 556 U.S. at 678).

For the reasons set forth below, Plaintiffs have failed to plead their claims for direct infringement, vicarious infringement and tortious interference against Defendants.

## II.    PLAINTIFFS FAIL TO PLEAD CLAIMS FOR DIRECT INFRINGEMENT

"In copyright infringement cases, given 'the principle enshrined in Rule 8 [of the Federal Rules of Civil Procedure]—namely, to provide defendants fair notice against them—a plaintiff may not rest on bare-bones allegations that infringement occurred.'" *Jacobs v. Carnival Corp.*, No. 06 Civ. 0606 (DAB), 2009 U.S. Dist. LEXIS 31374, at *11 (S.D.N.Y. Mar. 25, 2009) (quoting *Sharp v. Patterson*, 2004 U.S. Dist. LEXIS 22311, 2004 WL 2480426, *12 (S.D.N.Y. 2004)). "Rather, 'Rule 8 requires that the particular infringing acts be set out with some specificity.'" *Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *11 (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994), *cert. denied*, 513 U.S. 950 (1994)).

Accordingly, courts in this District require infringement plaintiffs to allege: "(i) which specific original works are the subject of the copyright claim, (ii) that plaintiff owns the copyrights in those works, (iii) that the copyrights have been registered in accordance with the statute, and (iv) by what acts during what time the defendant infringed the copyright." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 631 (S.D.N.Y. 2019) (Abrams, J.); *see also The Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, No. 20-cv-8180 (CM), 2022 U.S. Dist. LEXIS 162451, at *18-20

(S.D.N.Y. Sept. 8, 2022) ("By failing to specify the works that were infringed, or where, when, and how the infringement occurred, Defendants have failed to plead any instance of copyright infringement") (citing *Kelly*, 145 F.R.D. at 36, n.3).

Plaintiffs' infringement claims must be dismissed for their failure to allege any of these required elements.

### A.    Plaintiffs Fail to Allege How, When or Where the Alleged Infringements Took Place

Plaintiffs fail to identify any particular infringing acts undertaken by any particular defendant, offering nothing but generalized and vague allegations concerning an undefined "distribution chain," which Plaintiffs describe as including "the creation of unauthorized infringing works," "permitting and/or directing the creation of additional infringing works such as accompanying music videos and lyric videos," and "the provision of any infringing sound recording services." (Cmplt. ¶ 45.) Completely absent from the Complaint are any allegations as to (i) specific videos that any particular defendant created or distributed containing any of Plaintiffs' compositions, (ii) any physical recordings that any particular defendant manufactured or distributed containing any of Plaintiffs' compositions, or (iii) any "sound recording services" that any particular defendant provided with respect to any of Plaintiffs' compositions.[4]

Such "[b]road, sweeping allegations of infringement do not comply with" federal pleading standards. *See Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *11, *14 (*quoting Marvullo v. Gruner & Jahr,* 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) ("unadorned allegation" that defendants published a photograph "'beyond the scope … of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss.")); *Palmer Kane LLC v.*

---

[4] The "provision of … sound recording services" is particularly vague and is completely untethered from any of the exclusive rights under copyright. *See* 17 U.S.C. § 106.

*Scholastic Corp*., No. 12-CV-3890*, 2013 U.S. Dist. LEXIS 27196, at *8 (S.D.N.Y. Feb. 26, 2013) (broad assertions of purportedly infringing acts insufficient to withstand motion to dismiss); *Cole v. John Wiley & Sons*, No. 11Civ. 2090 (DF), 2012 U.S. Dist. LEXIS 108612, at *38-41 (S.D.N.Y. Aug. 1, 2012) (dismissing claims for failure to sufficiently detail "by what acts" defendants had allegedly infringed plaintiff's copyrights); *Lennon v. Seaman*, No. 99  Civ. 2664 (LBS), 2002 U.S. Dist. LEXIS 1237, at *22 (S.D.N.Y. Jan. 28, 2002) (allegations of infringement "by copying, publishing, distributing, selling and transferring the Photographs" were too "generic and imprecise" and infringement claim was therefore dismissed); *Lambertini v. Fain*, No. 12-CV-3964 (DRH)(ARL), 2014 U.S. Dist. LEXIS 131390, at *7-8 (E.D.N.Y. Sept 17. 2014) (dismissing copyright infringement claims where plaintiff failed "to sufficiently allege the acts constituting the infringement or when the alleged infringement occurred.").

Moreover, Plaintiffs claim unspecified defendants infringed by "permitting and/or directing" infringing activities of others, rather than performing the purportedly infringing acts themselves.  (Cmplt. ¶ 45.)   Such conduct cannot, by definition, be the basis of a claim for direct infringement.  *See Lopez v. Bonanza.com, Inc.*, No. 17-Civ-8493 (LAP), 2019 U.S. Dist. LEXIS 170715, *50-51 (S.D.N.Y. Sep. 30, 2019) (liability for direct infringement must be premised upon a volitional act equating to the "initiation of the act of copying"); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc.,* 536 F.3d 121, 131-33 (2d Cir. 2008) (direct liability attaches only to "the person who actually presses the button" that causes the infringement).

The Complaint also fails to identify the time period during which any infringement allegedly occurred, which independently requires dismissal of Plaintiffs' infringement claims.  *See Paul Rudolph Found*., 2022 U.S. Dist. LEXIS 162451, at *18-20 (dismissing infringement claims where plaintiff failed to allege when infringement occurred); *Yamashita v. Scholastic, Inc*., No. 16-

cv-9201, 2017 U.S. Dist. LEXIS 2173, at *3 (S.D.N.Y. Jan. 5, 2017) (failure to allege a timeframe for when alleged infringement occurred mandated dismissal of claim); *Cole*, 2012 U.S. Dist. LEXIS 108612, at *40 (same); *Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *14-15 (dismissing infringement claim where "Plaintiffs have failed with these pleadings to allege 'during what time' *any* of the Defendants infringed the copyrights to their works").

Finally, where there are indications that some of the allegedly infringing conduct took place overseas, "it is incumbent upon the Plaintiffs to allege where the specific infringements took place," because "the Copyright Act has no extraterritorial application[.]" *Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *12 (citing *The Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976)); *see also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, No. 96-cv-1103, 1996 U.S. Dist. LEXIS 18653, at *14-15, 18 (S.D.N.Y. Dec. 17, 1996) (stating "a plaintiff must first demonstrate that the domestic predicate act was itself an act of infringement in violation of the copyright laws," as "mere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts."); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 340 (S.D.N.Y. 2020) (dismissing claim where plaintiff failed to allege a "link between the foreign publication on the internet and the United States … given the limitation on the extraterritorial application of United States copyright law.")

Here, Plaintiffs acknowledge that the vast majority of the defendants are located and have operations abroad (Cmplt. ¶¶ 16, 18-30), yet the Complaint fails to specify which defendant took which allegedly infringing act, and it contains no allegations whatsoever as to whether *any* of the allegedly infringing conduct took place in the United States as opposed to overseas.  This requires dismissal of Plaintiffs' infringement claims.  *See Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *15-16

("Plaintiffs' bare-bones allegations can hardly be said to provide Defendants with fair notice of the charges against them" where "Plaintiffs failed to submit with any specificity where the alleged performances took place; that is, where, literally in the world, the ships were at sea when the performances occurred" and plaintiffs' allegation that some "planning and preparation" for the infringements took place in the United States were "far too general to satisfy Rule 8 as interpreted by this Court") (*citing Sharp v. Patterson*, No. 03 Civ. 8772 (GEL), 2004 U.S. Dist. LEXIS 22311, at *42 (S.D.N.Y. Nov. 3, 2004)); *Watson v. Compagnie Financiere Richemont SA*, No-18-Civ-547 (PGG), 2020 U.S. Dist. LEXIS 154709, at *15-17 (S.D.N.Y. Aug. 25, 2020) (stating "given the international character of the SAC's allegations – for example that Defendant CFR is a Swiss company, and that the Work was first used by Defendants at an art festival in Switzerland – this Court cannot reasonably infer that these actions took place in the United States," and holding that "[w]here a complaint falls short of making any clear allegations that the defendant engaged in infringing activity in the United States, it does not state a claim for direct copyright infringement"); *Roberts v. Keith*, No.04-CV-10079 (LAP), 2009 U.S. Dist. LEXIS 101412, at *10-11 (S.D.N.Y. Oct. 23, 2009) ("Here, the Complaint falls short of making any clear allegation that SRGL engaged in infringing activity in the United States… [T]he only specific allegations concerning SRGL, or its record labels … are that they re-released the album … in the United Kingdom and Europe.").

## B.    Plaintiffs Engage in Impermissible Group Pleading

Plaintiffs do not identify which particular defendants were involved with any particular acts of alleged infringement.  Nor do they identify which of the sixteen different defendants allegedly infringed which of the "over 50,000" Ultra Compositions.  Instead, Plaintiffs allege only that "[e]ach of the Defendants is liable for their role in the 'distribution chain' at issue."  (Cmplt. ¶ 45.)  And although Plaintiffs identify SME and Ultra Records as the "Record Label" for certain of the works included in their "non-exhaustive" list (*id.*, Ex. A), Plaintiffs do not explain the

significance of that reference, much less allege how SME or Ultra Records supposedly infringed Plaintiffs' exclusive rights in those individual works.

Where, as here, a complaint "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct," it fails "to provide fair notice of which claims pertain to which defendants" and the claims must be dismissed. *Plusgrade L.P. v. Endava Inc.*, No. 21-cv-1530 (MKV), 2023 U.S. Dist. LEXIS 39114, at *7-8 (S.D.N.Y. March 8, 2023) (dismissing copyright infringement claims where complaint did not specify which defendant engaged in what conduct, and instead relied on ambiguous statements that alleged misconduct was carried out by "defendants" as a group); *see also Lepore v. NL Brand Holdings LLC*, No. 16-cv-08115 (GBD), 2017 U.S. Dist. LEXIS 163035, at *20-21 (S.D.N.Y. Sept. 28, 2017) (group pleading impermissible and mandates dismissal even where defendants may have some corporate affiliation with each other).

### C.    Plaintiffs Fail to Identify All of the Works at Issue

Plaintiffs assert infringement of "over 50,000 musical compositions," while identifying only a small fraction of those works that are included in a "non-exhaustive" list attached to the Complaint. (Cmplt. ¶¶ 1, 5, 33, 39, 41) (alleging infringement of the "Ultra Compositions" which is defined as consisting of "over 50,000 musical compositions" owned or exploited by Plaintiffs). Plaintiffs also fail to identify which of those myriad of works are owned by which Plaintiff—either the U.S.-based UIMP or the Swiss-based UMPE. These allegations are insufficient to give Defendants notice of which works they are alleged to have infringed, and are precisely the kind of "broad and sweeping allegations" that do not survive a motion to dismiss. *Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *14 (allegations that defendants "have publicly performed and presented significant portions, *and/or* all, of Grease *and/or* other famous and enormously popular Broadway, off Broadway, other plays and other works" constitutes "the fishing expedition dreaded in

discovery, launched prematurely in the Complaint. Rule 8, however, will not allow it."); *see also*

*Palmer Kane LLC v. Scholastic Corp.*, No. 12 CIV. 3890 TPG, 2014 U.S. Dist. LEXIS 44881, at

*3 (S.D.N.Y. Mar. 31, 2014) (complaint failed to plead the first element of a copyright

infringement claim where exhibit did not contain an exhaustive list of works that were alleged to

have been infringed); *Cole v. John Wiley & Sons, Inc.*, No. 11 Civ. 2090 (DF), 2012 U.S. Dist.

LEXIS 108612, at *37-38 (S.D.N.Y. Aug. 1, 2012) (rejecting allegations that were "vague …

regarding which works are the subject" of the claim, explaining that it is "insufficient to list certain

works that are the subject of an infringement claim, and then allege that the claim is also intended

to cover other, unidentified works").

### D. Plaintiffs Fail to Plead That All Works at Issue Have Been Registered for Copyright

The Supreme Court has held that registration of a work with the U.S. Copyright Office is

a "prerequisite to suit" for infringement of that work. *Fourth Est. Pub. Benefit Corp. v. Wall-*

*Street.com, LLC*, 586 U.S. 296, 307 (2019) (citing 17 U.S.C. § 411(a)); *see also Family Dollar*

*Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 229 (S.D.N.Y. 2012) ("A copyright

holder may only sue for infringement of that copyright if it possesses a valid copyright

registration."). An infringement plaintiff must therefore allege "that the copyrights have been

registered in accordance with the statute," *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992),

*aff'd*, 23 F.3d 398 (2d Cir. 1994), *cert. denied*, 513 U.S. 950 (1994), and "expressly state that '[it]

has a registered copyright in the creative works identified [in the complaint]'." *Bill Diodato Photo.*

*LLC v. Avon Products, Inc.*, 12 Civ. 847 (RWS), 2012 U.S. Dist. LEXIS 110988, at *23-24

(S.D.N.Y. Aug. 7, 2012).

Because Plaintiffs purport to assert infringement of tens of thousands of *unidentified*

musical compositions, they obviously cannot allege that those compositions have been duly

registered with the U.S. Copyright Office. Indeed, aside from registration numbers included in Plaintiffs' "non-exhaustive" list, Plaintiffs do not allege that *a single one* of the works at issue has been registered for copyright, nor do they specify which of the Plaintiffs hold each registration. Accordingly, their claims must be dismissed. *See Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 318 (S.D.N.Y. 2023) ("Plaintiff's claims of direct copyright infringement of the films *Commander Hamilton*, *Austin Powers*, and *The Last Tattoo* must fail because the Amended Complaint never expressly alleges that the copyrights have been registered in accordance with the statute.") (quotation omitted); *Sibanda v. Elison*, No. 23-CV-5752 (JMF), 2024 U.S. Dist. LEXIS 144367, at *8 (S.D.N.Y. Aug 14, 2024) (dismissing copyright infringement claim for failure to allege that the works at issue were registered for copyright).

For each of the above reasons, Plaintiffs' have failed to plead claims for direct infringement, and those claims must be dismissed.

## III.     PLAINTIFFS' VICARIOUS INFRINGEMENT CLAIM AGAINST SME MUST BE DISMISSED

To pursue a claim for vicarious infringement, a plaintiff must first establish an incident of direct infringement for which it seeks to hold a defendant vicariously liable, and then offer factual allegations that permit the court to conclude that the vicarious infringer "(1) had the right and ability to supervise the infringing activity and . . . (2) has a direct financial interest in such activities." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 423, 434–35 (S.D.N.Y. 2011). Plaintiffs have not alleged any of these elements.

### A.     Plaintiffs Have Not Alleged a Predicate Direct Infringement

"Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Richards v. Warner Music Grp.*, No. 22-cv-6200, 2024 U.S. Dist. LEXIS 175192, at *11 (S.D.N.Y. Sept. 26, 2024) (*quoting Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d

Cir. 2018)).  For the same reasons that Plaintiffs' direct infringement claims against SME and Ultra Records fail, *see supra* § II, so do Plaintiffs' claims of direct infringement by the Foreign Defendants.  And absent a well-pled allegation of direct infringement, there can be no secondary liability.

Moreover, as Plaintiffs acknowledge, the Foreign Defendants are located and operate outside the United States.  (Cmplt ¶¶ 16, 18-30.)  Because the Copyright Act does not have extraterritorial reach, the Foreign Defendants can only have engaged in an act of direct infringement under the Copyright Act if that act occurred in the United States.  *See Hutson v. Notorious B.I.G., LLC*, No. 14-cv-2307 (RJS), 2015 U.S. Dist. LEXIS 170733, at *18-19 (S.D.N.Y. Dec. 21, 2015) ("the Second Circuit has long recognized that the federal Copyright Act 'do[es] not have extraterritorial application'" and thus, "courts do 'not have subject matter jurisdiction over infringement occurring outside of the United States'"); *Noland v. Janssen*, No. 17-CV-5452 (JPO), 2019 U.S. Dist. LEXIS 37781, at *12 n.5 (S.D.N.Y. March 8, 2019) (there can be no claims for infringement when infringing conduct is extraterritorial); *Fun-Damental Too, Ltd.*, 1996 U.S. Dist. LEXIS 18653, at *18 ("mere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts.").

Yet, the Complaint does not contain a single allegation as to where any purported infringement occurred.  *See supra* § II.A.  Accordingly, Plaintiffs have not established any actionable direct infringement by the Foreign Defendants, and their claim for vicarious infringement against SME therefore fails.  *See State St. Global Advisors Trust Co. v. Visbal,* 431 F. Supp. 3d 322, 340 (S.D.N.Y. 2020) (secondary liability claims inadequately pled based on plaintiff's failure to allege direct infringement claims in the U.S.); *Noland*, 2019 U.S. Dist. LEXIS

37781, at *10-11 (dismissing copyright infringement claims asserted against foreign defendants because of dearth of allegations that any infringement occurred within the U.S.); *Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *12, *15 (when acts may have occurred extraterritorially, a plaintiff must also allege where specific acts of infringement took place).

### B.    The Complaint Does Not Allege Any Facts Demonstrating that SME Has Control Over or Directly Financially Benefits From Any Infringing Conduct

When vicarious liability is premised on a parent/subsidiary relationship, the plaintiff "must show that the parent has a direct financial interest in the infringing activity, and that the parent has the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity." *See BroadVision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478 (WHP), 2009 U.S. Dist. LEXIS 45862, at *10 (S.D.N.Y. May 5, 2009).

Plaintiffs allege that SME should be held vicariously liable for the infringements of Ultra Records and of the Foreign Defendants, merely because those entities are purportedly "subsidiaries and affiliates" of SME, and because SME supposedly "profits from, and has the right and ability to control" Ultra Records and the Foreign Defendants' alleged infringing conduct.  (Cmplt. ¶¶ 2, 7, 51.)[5]  But those are mere legal conclusions devoid of any factual support, and are plainly insufficient to withstand a motion to dismiss.  *See Hartmann*, 690 F. Supp. 3d at 321 (a parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious liability against a parent for the actions of its subsidiary); *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 410 (S.D.N.Y. 2019) ("It is well settled that corporate ownership and control is

---

[5] Plaintiffs misleadingly refer to the Foreign Defendants as the "SME Subsidiaries," suggesting a close corporate relationship between them and SME.  This characterization is entirely incorrect and also belied by Plaintiffs' allegations that the Foreign Defendants are alternatively "subsidiaries" and "affiliates" of SME.  (Cmplt. ¶ 2.)  In reality, the relationship between SME and some of the Foreign Defendants is attenuated, to the extent it exists at all.  (Jacoby Decl. [Dkt. 59].)

insufficient to establish vicarious liability for torts committed by a corporate entity"); *Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 Civ. 1094 (AKH), 2014 U.S. Dist. LEXIS 152051, at *35 (S.D.N.Y Aug. 19, 2014) ("A parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious liability against a parent for the actions of its subsidiary."); *Broadvision Inc.*, 2009 U.S. Dist. LEXIS 45862, at *9-10 ("To state a claim for vicarious liability against a parent for the actions of its subsidiary, a plaintiff must show more than just a legal relationship between the parent and the subsidiary or that the parent benefits from its ownership of the subsidiary.")

Indeed, this Court has dismissed claims premised on nearly identical conclusory allegations of vicarious liability. *See Lixenberg v. Complex Media, Inc.*, No. 22-cv-354, 2023 U.S. Dist. LEXIS 4510, at *8 (S.D.N.Y. Jan. 10, 2023) (Abrams, J.) ("As to vicarious infringement, Plaintiff alleges—in similarly conclusory fashion—that Defendants 'had the right and ability to supervise the infringing conduct' and that 'they had a direct financial interest in the infringing conduct.' These allegations are no more than 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,' which cannot sustain a claim on a motion to dismiss"). Plaintiffs' vicarious infringement claim should meet the same fate.

### C.  Plaintiffs' Vicarious Infringement Claim Impermissibly Duplicates Their Direct Infringement Claims

Given the vague and collective allegations of infringement against all defendants in the Complaint, it appears that Plaintiffs seek to impose vicarious liability on SME for the same acts for which they seek to hold SME directly liable.[6]  However, "a defendant cannot be secondarily

---

[6] Because the Complaint fails to identify for which acts of direct infringement SME is purportedly vicariously liable, it fails to provide SME adequate notice of the claim as required by Fed. R. Civ. P. 8, and must therefore be dismissed. *See Jacobs*, 2009 U.S. Dist. LEXIS 31374, at *15-16 ("Plaintiffs' bare-bones allegations can hardly be said to provide Defendants with fair notice of the charges against them").

liable for their own direct infringement," and, to the extent Plaintiffs seek to hold SME doubly liable, their vicarious infringement claim must be dismissed.  *See Sound & Color, LLC v. Smith*, No. 2:22-cv-01508-AB (ASx), 2023 U.S. Dist. LEXIS 34402, at \*48 (C.D. Cal. Feb. 28, 2023); *Smith v. Weeknd*, No. CV 19-2507 PA (MRWx), 2019 U.S. Dist. LEXIS 221922, at \*9 (C.D. Cal. Aug. 23, 2019) (same); *see also State St. Global Advisors,* 431 F. Supp. 3d at 338 (S.D.N.Y. 2020) (to allege vicarious infringement, a plaintiff must plead an infringement by a *third party*).

## IV.    PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM AGAINST SME MUST BE DISMISSED

### A.    Plaintiffs' Tortious Interference Claim Is Preempted by the Copyright Act

Plaintiffs claim that SME is liable for tortious interference with contract, because SME "engaged in direct negotiations with certain songwriters who are published by the Ultra Plaintiffs in an attempt to obtain licenses directly from those songwriters for compositions they wrote." (Cmplt. ¶¶ 59-63.)  Because Plaintiffs' claim centers on their purported exclusive right to control the reproduction and distribution of musical works—rights squarely encompassed by the Copyright Act, 17 U.S.C. § 106—their claim is preempted and must be dismissed.

An ostensible state-law claim is preempted by the Copyright Act where the claim: (1) "applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works"; (2) "involve[s] acts of reproduction, adaptation, performance, distribution or display" and (3) does "not include any extra elements that make it qualitatively different from a copyright infringement claim."  *Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.,* 373 F.3d 296, 305-06 (2d Cir. 2004).

First, there is no question that the first preemption prong is satisfied: Plaintiffs' tortious interference claim applies to works that fall within the subject matter of copyright, as the claim relates to the licensing and exploitation of musical works.  *See* 17 U.S.C. § 102(a)(2) (listing

19

"musical works" among the types of works of authorship that fall within the subject matter of copyright).

Second, the gravamen of Plaintiffs' tortious interference with contract claim is that SME wrongfully attempted to negotiate licenses from a handful of songwriters to permit SME to reproduce, distribute and otherwise exploit musical works written by those songwriters, and thereby interfered with Plaintiffs' purported exclusive rights to distribute the works. (Cmplt. ¶¶ 59-63.) Those acts fall squarely within the exclusive rights that the Copyright Act confers on copyright holders. 17 U.S.C. § 106. Numerous courts in this District have therefore dismissed as preempted tortious interference with contract claims where, as here, the underlying breach is predicated on acts of unauthorized exploitation of copyrighted works. *See, e.g., Vargas v. Viacom Int'l*, No. 18 Civ. 474 (LLS), 2018 U.S. Dist. LEXIS 204474, at *27 (S.D.N.Y. Nov. 30, 2018) (dismissing tortious interference claim asserted by music publisher premised upon a breach of songwriter's agreement); *see also New London Assocs.*, 384 F. Supp. 3d at 411 (dismissing tortious interference claim as preempted by the Copyright Act where defendants allegedly induced other parties to "copy and distribute [plaintiff's] software without paying for it," recognizing that "this simply restates [plaintiff's] claims under the Copyright Act, and does not qualitatively differ from those claims"); *Ranieri v. Adirondack Dev. Grp.*, 164 F. Supp. 3d 305, 357-58 (N.D.N.Y. 2016) (tortious interference with contract claim seeking "to redress a legal or equitable right that is equivalent to exclusive rights protected by the Copyright Act, namely [the] exclusive rights to sell, copy and distribute" was preempted); *Netzer v. Continuity Graphic Assocs.*, 963 F. Supp. 1308, 1322 (S.D.N.Y. April 8, 1997) (tortious interference claims premised upon the unauthorized exploitation of a copyrighted work are preempted).

Third, "[c]ourts 'take a restrictive view' in evaluating whether an extra element makes a state-law claim qualitatively different from a federal copyright claim, such that a requirement of '[a]wareness or intent' would not render the state-law claim qualitatively different[.]" *Red Apple Media v. Batchelor*, 636 F. Supp. 3d 468, 473 (S.D.N.Y, 2022) (quoting *Briarpatch*, 373 F.3d at 306). Accordingly, the fact that a claim for tortious interference with contract includes elements of awareness of a contract and intentional interference with that contract "does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental non-equivalence between the state and federal rights implicated," and therefore does not save the claim from preemption. *Harper & Row, Publrs., Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539, 569 (1985); *see also Vargas*, 2018 U.S. Dist. LEXIS 204474, at *27 (allegations of "awareness of and interference with the agreements do not establish qualitatively different conduct from [defendants'] acts of infringement alleged in [p]laintiffs' copyright claims"); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996) (allegations that defendant "acted wrongfully and intentionally with knowledge of the Agreement – make no difference to the preemption analysis").

## B.    Plaintiffs Fail to Plead a Single Element of Their Tortious Interference Claim

Even if Plaintiffs' tortious interference claim was not preempted (which it is), it must be dismissed based on Plaintiffs' failure to allege any of the necessary elements for its claim—*i.e.*, "(a) that a valid contract exists; (b) that [the defendant] had knowledge of the contract; (c) that the [defendant] intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *See Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citations omitted).

### 1. Plaintiffs Have Not Identified Any Third-Party Contracts That Were Allegedly Breached

The Complaint contains only a single reference to any contracts that were allegedly interfered with: "the Sony Defendants knew that, *under the Ultra Plaintiffs' contracts with these songwriters*, the Ultra Plaintiffs have the exclusive right to issue such licenses." (Cmplt. ¶ 61) (emphasis added). Plaintiffs do not identify the date, parties to, or the material terms of any such contracts. Such lack of detail falls far short of the pleading standard. *See AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*, No. 14 Civ. 09494 (CM), 2015 U.S. Dist. LEXIS 162515, at *27 (S.D.N.Y. Dec. 1, 2015) ("Plaintiffs must provide at least some specific facts about the underlying contracts, such as the parties to the contracts or terms of the contracts, to put defendants on notice as to which contracts they are accused of interfering with."); *A.V.E.L.A., Inc. v. The Estate of Marilyn Monroe, LLC*, No. 12 Civ. 4828 (KPF), 2018 U.S. Dist. LEXIS 35536, at *33-34 (S.D.N.Y. Mar 5, 2018) (conclusory allegation that a contract existed and was breached insufficient to survive a motion to dismiss).

### 2. Plaintiffs Have Not Pled Any Facts Showing That SME Knew About The Allegedly Relevant Provisions of UIMP's Songwriter Contracts

Plaintiffs allege—in an entirely conclusory fashion—that SME "knew" that Plaintiffs' songwriters were contractually prohibited from granting licenses, and that Plaintiffs retained the exclusive right to license the songwriters' compositions. Plaintiffs do not allege *any* facts showing that SME had actual knowledge of either the existence, or any specific terms of any particular agreements with the identified songwriters, much less the specific provision that allegedly reserved to Plaintiffs the exclusive rights to license the songwriters' compositions. Plaintiffs have therefore failed to satisfy their pleading burden. *See Talon Prof'l Servs., LLC v. Centerlight Health Sys.*, No. 20 Civ. 78 (PAE), 2021 U.S. Dist. LEXIS 61219, at *24-25, *30-31 (S.D.N.Y. Mar. 30, 2021) (dismissing tortious interference claims where allegations that defendants were "aware" of the

agreements were "devoid of specifics"); *Taboola, Inc. v. Ezoic Inc.*, No. 17 Civ. 9909 (PAE)(KNF), 2020 U.S. Dist. LEXIS 67934, at *26-31 (S.D.N.Y. Apr. 17, 2020) (dismissing tortious interference claim where plaintiff alleged defendant was aware of the agreements, recognizing that "[t]here is substantial daylight between an awareness of the broad terms of a commercial relationship and awareness of the specific contractual terms of that relationship"); *Qube Films, Ltd. v. Padell*, No. 13-cv-8405, 2014 U.S. Dist. LEXIS 111595, at *23 (S.D.N.Y. Aug. 12, 2014) (on a tortious interference claim, a plaintiff must plead facts showing that the defendant had "actual knowledge" of the underlying agreement that was breached, as "constructive knowledge is not enough"); *Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008) (dismissing tortious interference with contract claim because a "general claim of [a defendant's] knowledge of the contracts" is insufficient to show that defendant "was aware of the limitations [the contracts] imposed" by the contract).[7]

### 3.    Plaintiffs Have Not Alleged Improper Interference by SME

As for the third element of a tortious interference claim—*improper* interference—Plaintiffs merely label SME's purported negotiations with songwriters as "improper." (Cmplt. ¶ 62.) But simply labeling an action as improper does not make it so. Instead, Plaintiffs are obligated to allege facts showing that "the defendant's *objective* was to procure [] a breach" and that the defendant "specifically intend[ed] to interfere with the relevant contract." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327-28 (S.D.N.Y. 2017); *see Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 18 (2d Cir. 2014) (plaintiff may not rely on conclusory allegations that a defendant "intentionally induced" a breach—rather, they must set

---

[7] To the extent Plaintiffs suggest that Defendants "should have known about a contract or its terms 'as a matter of course' or based on 'common practice' within an industry," that suggestion would be "similarly insufficient." *See Taboola*, 2020 U.S. Dist. LEXIS 67934, at *28.

23

forth "factual information that makes the inference of culpability plausible"). Plaintiffs have not

pled any such allegations. Indeed, Plaintiffs' own allegations undermine any such improper motive,

as Plaintiffs allege that SME contacted the songwriters "in an attempt to obtain licenses directly

from those songwriters for compositions they wrote" (Cmplt. ¶ 59), not for the purpose of causing

the songwriters to breach any agreements that they may have had with Plaintiffs. For this reason

as well, the tortious interference claim must be dismissed.

### 4.     Plaintiffs Have Not Pled That Any Breach Occurred

Also missing from the Complaint is any allegation that Plaintiffs' songwriters actually

breached their agreements with Plaintiffs. Though the Complaint alleges that SME "improperly

*contacted*" and "engaged in direct *negotiations* with certain songwriters … in an *attempt* to obtain

licenses directly from those songwriters for compositions they wrote" (Cmplt ¶¶ 59, 60) (emphasis

added), there is no allegation that any particular songwriter actually breached his or her agreement

with Plaintiffs. Nor could they have done so. If, as Plaintiffs' claim, the songwriters lacked the

right to issue licenses for compositions they wrote, then no amount of "contact" or "negotiations"

by SME could have resulted in those songwriters breaching their agreements with Plaintiffs.

Without any allegations that Plaintiffs' contracts with its songwriters were actually

breached, there obviously can be no claim for tortious interference with those contracts. *See Kirch*

*v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (affirming dismissal of tortious

interference claim for failure to allege a breach occurred); *Espire ADS LLC v. Tapp Influencers*

*Corp.*, 655 F. Supp. 3d 223, 261-62 (S.D.N.Y. 2023) (allegations of attempts to solicit, but no

indication that such attempts were successful, were insufficient to withstand motion to dismiss);

*Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 485 (S.D.N.Y. 2022)

(collecting cases where tortious interference claims were dismissed for failing to allege breach).

### 5.    Plaintiffs Have Not Pled That They Suffered Any Damage

Finally, Plaintiffs' tortious interference claim must be dismissed based on their failure to allege they suffered any damage as the result of any (unalleged) breach by the songwriters.  While Plaintiffs conclusory assert that they "suffered damages as a result of the foregoing" tortious interference (Cmplt. ¶ 63), the Court need not accept that assertion in deciding this motion.  *See Lindberg v. Dow Jones & Co., Inc.*, No. 20-cv-8231 (LAK), 2022 U.S. Dist. LEXIS 47100, at *5 (S.D.N.Y. Mar. 16, 2022) ("the FAC provides no factual basis for inferring that plaintiff suffered any non-reputational pecuniary loss as a proximate consequence of the alleged breach of the confidential agreements.  Accordingly, the FAC fails to state a claim [for tortious interference with contract] upon which relief may be granted, and plaintiff's motion to dismiss it is granted."); *Iqbal*, 556 U.S. at 678 (court may disregard bald, conclusory statements).

Plaintiffs' failure to offer any factual allegations—or even a coherent theory—as to how they were allegedly harmed by SME's "attempts" to negotiate licenses with the songwriters mandates dismissal.  *See Balder v. Sarandon*, No. 22-CV-06401 (JLR)(SN), 2023 U.S. Dist. LEXIS 233333, at *21 (S.D.N.Y. Dec. 18, 2023) (dismissing tortious interference claim for failure to allege any damages resulting from third party breach); *Cortez v. Stillwell Ready-Mix & Bldg. Materials, LLC*, No. 20-cv-7775, 2022 U.S. Dist. LEXIS 7345, at *6 (S.D.N.Y. Jan. 13, 2022) (same); *Taboola*, 2020 U.S. Dist. LEXIS 67934, at *37 (same); *K&G Elec. Motor & Pump Corp. v. Ingersoll-Rand Co.*, No. 18-cv-2308 (DRH)(SIL), 2019 U.S. Dist. LEXIS 147498, at *26 (E.D.N.Y. Aug. 27, 2019) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants SME and Ultra Records respectfully ask that the Court dismiss all claims asserted against them in this action, with prejudice.

Dated:  New York, New York
       February 17, 2025

LOEB & LOEB LLP

By: */s/ Tal E. Dickstein*
    Barry I. Slotnick
    Tal E. Dickstein
    Sarah Levitan Perry
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

    *Attorneys for Defendants*
    *Sony Music Entertainment and*
    *Ultra Records, LLC*

## **Certificate of Compliance with Local Rule 7.1(c)**

I hereby certify that the number of words in the foregoing memorandum of law, according to the word count on the word-processing program utilized, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block and this certificate of compliance, is 7,968.

Dated: New York, New York
       February 17, 2025

                    _/s/ Tal E. Dickstein_
                    Tal E. Dickstein

240718428

27