UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ULTRA INTERNATIONAL MUSIC　　　　　　　　:
PUBLISHING, LLC and ULTRA MUSIC　　　　:
PUBLISHING EUROPE AG,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**24 Civ. 9149 (RA) (GS)**
　　　　　　　　　　　　　　Plaintiffs,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**OPINION & ORDER**
　　　　　　　　- against -　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
SONY MUSIC ENTERTAINMENT, et al.,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendants.　　　　　　　　　　:
------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiffs Ultra International Music Publishing, LLC ("UIMP") and Ultra Music Publishing Europe AG (together, "Plaintiffs") bring this action for copyright infringement against Sony Music Entertainment ("SME") and fifteen other corporate entities they contend are all "part of the Sony corporate family." (Dkt. No. 50 at 1). Plaintiffs effected service on SME and the only other U.S.-based defendant, Ultra Records, LLC ("Ultra"). (Dkt. Nos. 40 & 41). Plaintiffs now move for leave to serve the remaining fourteen foreign-based defendants through alternative means—specifically, via email and/or messages to social media accounts. (Dkt. No. 49). For the reasons set forth below, Plaintiffs' motion is **DENIED**.

## BACKGROUND

Plaintiffs filed their Complaint on November 29, 2024. (Dkt. No. 1 ("Compl.")). Plaintiffs are music publishing companies that own and exploit the copyrights in over 50,000 musical compositions. (*Id.* ¶ 1). According to the Complaint, Plaintiffs are "widely acknowledged as being among the world's leading

1

independent music publishers" and have "enjoyed more than two decades of commercial and critical acclaim." (*Id.*).

Defendants are SME, Ultra, and fourteen other defendants alleged to be organized under the laws of the United Kingdom, Germany, Australia, Italy, France, Sweden, and Switzerland: AWAL Recordings Ltd., 4ZA Music Ltd., Room Two Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony Music Entertainment Sweden AB, Sony Music Entertainment Switzerland GmbH, and Four Music Productions GmbH (the "Foreign Defendants"). (*Id.* ¶¶ 14, 16, 18-30).

For years, Plaintiffs allege, they have been engaged in an audit of SME and its affiliates that has uncovered underpayment and non-payment of royalties to Plaintiffs and their songwriters. (*Id.* ¶ 3). As a result, Plaintiffs no longer grant licenses to Defendants. (*Id.* ¶ 4). Nevertheless, according to the Complaint, Defendants have continued to upload, sell, and synchronize Plaintiffs' copyrighted sound recordings without authorization, "willfully committing blatant, ongoing, and massive piracy" of Plaintiffs' intellectual property. (*Id.* ¶¶ 5-6). Plaintiffs assert claims for direct copyright infringement against all Defendants, vicarious copyright infringement against SME, and tortious interference with contractual relations against SME and two of the Foreign Defendants. (*Id.* ¶¶ 43-63). Plaintiffs seek at least $20 million in damages. (*Id.* at 14).

Plaintiffs served SME and Ultra in early December 2024. (Dkt. Nos. 40-41).[1] On January 23, 2025, Plaintiffs filed the instant motion for leave to serve the Foreign Defendants through alternative means (Dkt. No. 49), along with a supporting memorandum of law (Dkt. No. 50 ("Pl. Br.")); a declaration from UIMP's founder and president (Dkt. No. 51); a declaration from counsel recounting communications with Sony's in-house and outside counsel relating to service on the Foreign Defendants (Dkt. No. 52); and a declaration from a legal assistant attaching various exhibits relating to the Foreign Defendants (Dkt. No. 53).[2]

On February 6, 2025, SME filed an opposition to Plaintiffs' motion (Dkt. No. 58 ("Opp.")), along with declarations from its in-house and outside counsel giving their versions of the communications with Plaintiffs' counsel (Dkt. Nos. 59 & 60). SME's opposition acknowledges the possibility that it may lack standing to oppose Plaintiffs' motion (which is directed solely to service on the Foreign Defendants) and asks that, to the extent it lacks standing, the Court consider its submission "as a brief of *amicus curiae*." (Opp. at 1 n.1).

Plaintiffs filed a reply brief on February 13, 2025 (Dkt. No. 61 ("Reply")), along with two additional declarations from counsel and the legal assistant (Dkt. Nos. 62 & 63). In addition to responding to SME's arguments on the merits, Plaintiffs' reply brief argues that SME has no standing to oppose Plaintiffs' motion

---

[1] On February 17, 2025, SME and Ultra filed a motion seeking dismissal of all claims asserted in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 65-66).

[2] On January 24, 2025, the Honorable Ronnie Abrams referred this case to the undersigned for general pretrial supervision and resolution of Plaintiffs' motion for alternative service. (Dkt. No. 56).

and does not qualify as an *amicus curiae*. (Reply at 2-3). Hence, Plaintiffs ask the Court to disregard SME's opposition brief. (*Id.* at 3). However, Plaintiffs lodge no objection to the Court's consideration of the declarations from SME's counsel. (*Id.* at 3 n.3).

## LEGAL STANDARD

Plaintiffs' application is governed by the service of process provisions of Rule 4 of the Federal Rules of Civil Procedure. Rule 4(h)(2) provides that service of a summons and complaint may be effected upon a foreign corporation outside a judicial district of the United States "in any manner prescribed by Rule 4(f) for serving an individual" except by personal delivery under Rule 4(f)(2)(C)(i). Fed. R. Civ. P. 4(h)(2).

Under Rule 4(f)(1), an individual and, hence, a foreign corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). Rule 4(f)(2) specifies other methods of service "if there is no internationally agreed means"—*e.g.*, the foreign country is not a signatory to the Hague Convention. Fed. R. Civ. P. 4(f)(2). Plaintiffs acknowledge that the United Kingdom, Germany, Australia, Italy, France, Sweden, and Switzerland—the countries where the Foreign Defendants are based—are all signatories to the Hague Convention. (*See* Pl. Br. at 6-7). Rule 4(f)(3), upon which Plaintiffs rely, provides that service may be effected "by other means not prohibited by international

4

agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

"Courts have repeatedly recognized that 'there is no hierarchy among the subsections in Rule 4(f).'" *Levai v. Marlborough Gallery Inc.*, No. 20 Civ. 7911 (AJN) (KNF), 2021 WL 8263546, at *4 (S.D.N.Y. May 3, 2021) (quoting *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505 (ALC) (DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012)). Alternative service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief," and a plaintiff "is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Asia Cube Energy Holdings, Ltd. v. Inno Energy Tech Co. Ltd.*, No. 20 Civ. 6203 (AJN), 2020 WL 4884002, at *2 (S.D.N.Y. Aug. 17, 2020) (citations omitted; emphasis in original).

Nonetheless, "'[d]istrict courts in this Circuit generally impose two . . . threshold requirements before authorizing alternative service under Rule 4(f)(3): (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'" *Live Brands Holdings, LLC v. Gastronomico Gracias a Dios, Sociedad Responsiabilidad Limitada de Cap. Variable*, No. 20 Civ. 1213 (GHW), 2020 WL 13855620, at *2 (S.D.N.Y. May 13, 2020) (quoting *Devi v. Rajapaska*, No. 11 Civ. 6634, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012)); *accord, e.g.*, *Agrana Fruit US, Inc. v. Ingredientrade Inc.*, No. 23 Civ. 10147 (ALC) (GS), 2024 WL 773643, at *2 (S.D.N.Y. Feb. 26, 2024); *Doe v. Hyassat*, 342 F.R.D. 53, 58-59 (S.D.N.Y. 2022); *Berdeaux v. OneCoin Ltd.*, No. 19 Civ. 4074 (VEC), 2019

5

WL 8685006, at *1 (S.D.N.Y. Nov. 1, 2019). "Effectively, this rule requires the moving party first to follow—or attempt to follow—international agreements and law in recognition of principles of comity and not to whimsically seek an alternate means of service." *Gang Chen v. China Green Agric., Inc.*, No. 20 Civ. 9232 (MKV), 2021 WL 103306, at *2 (S.D.N.Y. Jan. 6, 2021).

"An alternative method of service under Rule 4(f)(3) 'is acceptable if it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process.'" *Asia Cube*, 2020 WL 4884002, at *2 (quoting *SEC v. China Intelligent Lighting & Elecs., Inc.*, No. 13 Civ. 5079 (JMF), 2014 WL 338817, at *1 (S.D.N.Y. Jan. 30, 2014)). "A means of service comports with due process if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at *3 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Ultimately, the "'decision of whether to order service of process under Rule 4(f)(3) is committed to the sound discretion of the district court.'" *Id.* at *2 (quoting *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013)).

## DISCUSSION

### A. Consideration of SME's Filings

At the outset, the Court addresses Plaintiffs' objection to SME's brief opposing Plaintiffs' motion.

As Plaintiffs note (Reply at 3), it is well established that "'[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants.'" *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17 Civ. 6130 (LTS) (SN), 2018 WL 11222556, at *1 (S.D.N.Y. Apr. 6, 2018) (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010)). Accordingly, SME is not entitled to submit an opposition to Plaintiffs' motion and the Court is not required to consider its submission. The real question is whether the Court should, in its discretion, accept SME's submission as akin to an *amicus* brief.

"A district court has broad discretion in deciding whether to accept an *amicus* brief." *City of N.Y. v. United States*, 971 F. Supp. 789, 791 n.3 (S.D.N.Y. 1997); *see SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT), 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021) ("deciding whether to permit an individual to act as amicus curiae lies in the firm discretion of the district court") (citation omitted). A number of courts in this District have, in the absence of any other adversarial briefing, exercised their discretion to consider arguments by a co-defendant opposing a motion for alternative service. *See, e.g.*, *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 24 Civ. 744 (JLR), 2024 WL 2317715, at *1 n.1 (S.D.N.Y. May 22, 2024); *In re New Oriental Educ. & Tech. Grp. Inc. Sec. Litig.*, No. 22 Civ. 1014 (JHR), 2023 WL 5466333, at *1 n.1 (S.D.N.Y. Aug. 24, 2023); *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 Civ. 8118 (PGG), 2018 WL 6253877, at *2 n.2 (S.D.N.Y. Sept. 21, 2018); *Nurlybaev*, 2018 WL 11222556, at *1; *In re GLG*, 287 F.R.D. at 265.

Plaintiffs argue that these cases were "incorrectly decided" because an *amicus curiae* is "'[s]omeone who is not a party to a lawsuit'" and thus SME, who is a party, "do[es] not qualify as" an *amicus*. (Reply at 3-4 & n.5 (quoting *Amicus Curiae*, Black's Law Dictionary (12th ed. 2024)). But Plaintiffs cite no case denying consideration of a submission from a party based on this logic. While SME unquestionably is a party to this litigation, it is not a party to the dispute at hand, as Plaintiffs themselves establish. "The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties," *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11 Civ. 6746 (RJH), 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011), and "[a]n *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all," *id*. That rationale applies here. The Foreign Defendants have not appeared in the action and are not represented on this motion. Hence, SME's brief offers insights not available from the only other motion papers before the Court, which are from Plaintiffs.[3]

---

[3] Plaintiffs' argument also fails to account for the numerous decisions, outside the context of motions for alternative service, that entertain submissions from parties who had no right to be heard on a particular issue. For example, courts have considered briefs from defendants in federal securities actions opposing otherwise-unopposed applications for appointment of lead plaintiff. *See, e.g.*, *Damri v. LivePerson, Inc.*, No. 23 Civ. 10517 (PAE), 2024 WL 1242510, at *2 n.1 (S.D.N.Y. Mar. 22, 2024) ("LivePerson's role on this motion is akin to that of an *amicus curiae*, whose arguments the Court may consider in its discretion"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n.3 (S.D.N.Y. 2012); *see also In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027-t11, 2021 WL 408971, at *3 (Bankr. D.N.M. Feb. 4, 2021) (considering arguments by defendants in adversary proceedings on motion to stay appeal even though they lacked standing to appeal order in question; "[p]arties who lack standing to appeal, but who wish to be heard, are treated like amici curiae"); *Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017) (considering objection to venue transfer motion made by plaintiff in a related case; "regardless whether Phung has standing to raise the argument, the court is inclined to consider it, in the same way that the court could consider the argument from an *amicus curiae* who is not a party to a case"); *Sw. Cent. for Biological Diversity v. U.S. Forest Serv.*, 82 F. Supp. 2d 1070,

Plaintiffs also argue that the cases cited by SME are distinguishable because in those cases, unlike here, the plaintiffs were seeking leave to effect service on the appearing defendant's litigation counsel. (Reply at 4 n.5). But Plaintiffs do not explain why that is a distinction that matters for this purpose. And courts have accepted *amicus* briefs in this context even where plaintiffs were seeking to serve the unserved defendants through means other than through the appearing defendant's litigation counsel. *Orient Plus*, 2024 WL 2317715, at *2 (plaintiffs requested alternative service on certain defendants via email); *Nurlybaev*, No. 17 Civ. 6130, Dkt. No. 70 (plaintiffs requested alternative service via service on a registered agent and via email as well as through litigation counsel).

The Court will thus treat SME's brief opposing Plaintiffs' motion as a submission in the nature of an amicus brief and consider the arguments made therein, as well as the contents of the declarations submitted by SME.

## B. Plaintiffs' Motion for Alternative Service

As noted above, before authorizing alternative service under Rule 4(f)(3), courts in this Circuit generally require the plaintiff to show that it "has reasonably attempted to effectuate service on the defendant" through other means and that "the court's intervention is necessary." *Live Brands Holdings,* 2020 WL 13855620, at *2 (citation omitted). Here, Plaintiffs have not made any attempts to effectuate service on the Foreign Defendants through other means. They do not deny that

---

1075 (D. Ariz. 2000) (treating pleadings of parties addressing plaintiff's standing "as amicus memoranda rather than as a motion brought by a party as of right" given prior order limiting parties' participation to the remedial phase of the litigation).

they have the ability to serve the Foreign Defendants through the Hague Convention or claim they would face any unusual impediments in doing so.

    Courts in this Circuit routinely reject applications for alternative service where no attempt at service through the Hague Convention or other conventional means has been made. *See, e.g.*, *Asia Maritime Pac. Chartering Ltd. v. Comercializadora Columbia S.D. de C.V.*, No. 22 Civ. 10789 (RA), 2023 WL 372880, at *2 (S.D.N.Y. Jan. 23, 2023) (denying motion for alternative service where "Petitioner has not yet made any attempt to serve Respondent by means that are clearly authorized by the [Hague] Convention"); *Pearson Educ., Inc. v. Aggarwal*, No. 17 Civ. 203 (KMW), 2022 WL 3700142, at *6 (S.D.N.Y. Aug. 26, 2022) (denying motion for alternative service for failure to "me[e]t the threshold requirements generally imposed before a court authorizes email as a means of service" where plaintiffs "do not state that they have attempted service pursuant to Article 10 [of the Hague Convention] at the U.K. Defendants' known addresses"); *Live Brands Holdings,* 2020 WL 13855620, at *2 ("Plaintiff has not attempted to use any of the methods of service under the Hague Convention. Therefore, Plaintiff has not made a showing that it 'reasonably attempted to effectuate service' on Defendants."); *Tastefairy Corp. v. Kumar*, No. 19 Civ. 2953 (NGG), 2019 WL 13220974, at *4 (S.D.N.Y. Oct. 31, 2019) ("where, as here, the defendant resides in a country that is a signatory to the Hague Service Convention, 'courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under [Rule] 4(f)(3)'") (quoting

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 378 (S.D.N.Y. 2018)); *Topping v. Deloitte Touche Tohmatsu CPA Ltd.*, No. 14 Civ. 2814 (ER), 2014 WL 13118091, at *3 (S.D.N.Y. Oct. 3, 2014) (denying motion for alternative service and finding that "Plaintiffs must first attempt service under the Hague Convention"); *Madu*, 265 F.R.D. at 116 (denying motion for alternative service because "[p]laintiffs have not met their threshold requirement of reasonably attempting to effect service on defendants").

While circumstances can justify an exception to this general rule, Plaintiffs have not pointed to any such circumstances here. Plaintiffs claim that serving the Foreign Defendants under the Hague Convention is "an untenable option," but offer nothing to support that claim. (Reply at 5-6). All fourteen Foreign Defendants appear to be established corporate entities located in jurisdictions with well-functioning legal systems. Plaintiffs do not contend that they have had, or would have, any difficulty in identifying service addresses for the Foreign Defendants or in securing the cooperation of the foreign countries in effecting service. In fact, for most of the Foreign Defendants, physical address in their home countries may be found on the very same websites from which Plaintiffs extract email addresses and other information they say should be used for alternative service.[4]

---

[4] *See* www.awal.com/company (AWAL); https://find-and-update.company-information.service.gov.uk/company/01471066 (Sony Music UK); https://find-and-update.company-information.service.gov.uk/company/12726800 (4ZA); https://find-and-update.company-information.service.gov.uk/company/14189169 (Room Two Recordings); https://www.sonymusic.eu/contact/ (BI Recordings); https://www.sonymusic.com.au/about/ (Sony Music Australia); https://www.sonymusic.eu/imprint/ (Sony Music Germany);  https://www.sonymusic.eu/imprint/; https://www.sonymusic fr/mentions-legales/?srsltid=AfmBOorwONayUZ9LJI3740G76K2UaiX9UzmClmK6biPBynyJP73shge_ (Sony Music France); https://www.sonymusic.ch/contact/ (Sony Music Switzerland).

11

These circumstances easily distinguish this case from others, cited by Plaintiffs, authorizing alternative service under Rule 4(f)(3) where "defendants have operated in such a way as to stymie any effort to determine their true addresses," *Elsevier*, 287 F. Supp. 3d at 379, or where "a foreign country declined to effect service under . . . the Hague Convention," *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 510 (S.D.N.Y. 2013); *see also United States v. Mrvic*, 652 F. Supp. 3d 409, 415 (S.D.N.Y. 2023) (authorizing alternative service where plaintiff "spent considerable time and effort reasonably attempting to effectuate service on the Defendant under the Hague Convention" and "[o]ther efforts to locate Defendant's current address have been unsuccessful"); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 264 (S.D.N.Y. 2012) (authorizing alternative service after plaintiffs' counsel unsuccessfully attempted to serve individual defendant at corporate headquarters and engaged in unsuccessful efforts to identify his residential address); *SEC v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *1, 3 (S.D.N.Y. Feb. 13, 2009) (authorizing alternative service by publication where two prior attempts to serve defendant via Hague Convention failed and defendant's "address is unknown"). (*See* Pl. Br. at 4-5; Reply at 4 n.6).

Plaintiffs further contend that where defendants are accused of counterfeiting and fraud—a category into which, Plaintiffs contend, the Foreign Defendants fall—"a plaintiff need not first attempt Hague Convention service before obtaining permission for alternative service under Rule 4(f)." (Reply at 5). There is no such rule, and Plaintiffs' argument misreads the case law. It is true that courts

have permitted email and social media service on foreign e-commerce businesses that were allegedly selling counterfeit products online. But that is because those types of businesses "lack a genuine or identifiable physical address and there is no other reliable method of service." *Agrana Fruit*, 2024 WL 773643, at *3 n.2 (citing *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 382 (S.D.N.Y. 2020) (permitting alternative service on alleged e-commerce counterfeiters because they "have been known to use aliases, false addresses and other incomplete identification information to shield their identities")). Plaintiffs have made no showing that this is true of any of the Foreign Defendants.

Reduced to its essence, Plaintiffs' justification for why they should not have to serve through the Hague Convention is that it would be "wasteful, expensive, and time-consuming" and delay the progress of their suit. (Pl. Br. at 3; Reply at 6). But courts have consistently held that this is not a sufficient justification for alternative service where the plaintiff has not first reasonably attempted to effect service through traditional means. *See, e.g.*, *Agrana Fruit*, 2024 WL 773643, at *3 (finding alternative service unjustified based on claim that service through traditional means "would be time-consuming and cumbersome," something "which could be said, to a greater of lesser degree, about service on any foreign defendant"); *Asia Maritime,* 2023 WL 372880, at *2 ("While the Court recognizes that service on foreign respondents [through the Hague Convention] may take time, Petitioner's 'desire to move quickly' is not a basis to circumvent procedural rules."); *Topping*, 2014 WL 13118091, at *4 ("As for Plaintiffs' claims that service in China is 'difficult

13

and time-consuming,' the Court finds such arguments unavailing[.]") (citation omitted); *KG Marine, LLC v. Vicem Yat Sanayi Ve Ticaret AS*, 24 F. Supp. 3d 312, 315 (W.D.N.Y. 2014) (denying motion for alternative service where "Plaintiff does not offer any reason explaining why it is in need of alternate means" except that service under the Hague Convention "'is very costly and time consuming'").

In rare cases, a proper showing of anticipated inordinate delay in effecting service through Rule 4(f)(1) has been deemed sufficient to warrant alternative service. *See, e.g.*, *In re BRF S.A. Sec. Litig.*, No. 18 Civ. 2213 (PKC), 2019 WL 257971, at *3-4 (S.D.N.Y. Jan. 18, 2019) (permitting alternative service after plaintiff offered affidavit from international process server stating Brazil's letter rogatory process often takes 12 to 18 months or longer); *Wash. St. Inv. Bd.*, 2018 WL 6253877, at *6 (same). In their original motion, Plaintiffs made no attempt to make such a showing, relying instead on conclusory assertions that service through the Hague Convention "would be extraordinarily expensive and time consuming." (Pl. Br. at 5 n.1). On reply, Plaintiffs submitted a declaration from Sophia Mailhos, a paralegal at their law firm, which attached, *inter alia*, an email from the process server the law firm uses to serve foreign defendants. (Dkt. No. 63 ("Mailhos Declaration") ¶ 4 & Ex. 1). According to the email from the process server, estimates of the time it would take to effect service through the Hague Convention vary based on the country where each Foreign Defendant is located, but range from two to four months (Switzerland), three to six months (Sweden and Hong Kong), around six months (Germany), or six months to one year (the U.K., Australia, Italy,

and France). (*Id.* ¶¶ 6-13 Ex. 1). Further, according to the Mailhos Declaration, the process server would charge a total of $9,100 to serve all fourteen Foreign Defendants through the Hague Convention, and Plaintiffs would incur an additional $2,944 in translation costs where the papers need to be translated into a language other than English. (*Id.* ¶¶ 4, 14 & Ex. 8).

SME, by letter dated February 17, 2025, asked that the Mailhos Declaration be stricken on the ground that it was improperly submitted only on reply. (Dkt. No. 64). Plaintiffs responded the next day, arguing that the Mailhos Declaration was proper and should be considered. (Dkt. No. 67). The Court need not resolve this dispute because, even considering the contents of the Mailhos Declaration, it falls short of justifying Plaintiffs' request to be excused from attempting service through the Hague Convention.

First, the Court attaches little weight to the time estimates in the process server's email, given that (1) the email fails to articulate the factual basis for those estimates; (2) the email appears to have been hastily prepared within a matter of a few hours; and (3) its author not only was unsworn, but also apparently unaware the document would be submitted to a court. (Dkt. No. 63 Ex. 1). *See, e.g.*, *Live Brands Holdings,* 2020 WL 13855620, at *2 n.3 (finding counsel's "unsworn" and "unsupported" statement that service in Mexico "often takes between eight and twelve months" insufficient to justify alternative service). The time estimates are not unusually long, and Plaintiffs' concern about delay rings somewhat hollow given that they did not bring this suit until nearly two years after they first accused

15

Defendants of violating their copyrights in January 2023; they did not move for alternative service until nearly two months after filing suit; they have taken no steps to initiate process under the Hague Convention; and they did not even inquire as to the time it would take to effect service under the Hague Convention until three weeks ago.  (Compl. ¶¶ 34-35; Dkt. No. 63 Ex. 1).  *See Live Brands Holdings,* 2020 WL 13855620, at *2 n.3 (noting that "Plaintiff could have initiated the service of process abroad nearly three months earlier, when it received a summons for each defendant").

Second, the roughly $12,000 in Hague Convention service costs are minimal in the context of this high-stakes commercial litigation, belying Plaintiffs' original characterization that it would be "extraordinarily expensive" to serve through the Hague Convention.  (*See* Pl. Br. at 5 n.1).[5]  As one of "the world's leading independent music publishers" (Compl. ¶ 1), Plaintiffs cannot seriously claim undue burden or expense in having to incur these costs.

Finally, Plaintiffs argue that they *have* made "reasonable" and "diligen[t]" efforts to effect service because they asked SME's counsel to accept service on behalf of the Foreign Defendants and SME declined.  (Reply at 6 & n.9).  Plaintiffs cite no case supporting the proposition that their request to counsel constitutes an attempt

---

[5] Plaintiffs also emphasize that they will need to serve fourteen separate Foreign Defendants located in several different foreign countries, claiming this distinguishes this case from those where a motion for alternative service as to one defendant was denied. (Pl. Br. at 5 n.1; Reply at 6).  But the Court fails to see how the case for alternative service is any stronger when the Foreign Defendants are considered collectively rather than individually.  It is Plaintiffs who chose to sue fourteen Foreign Defendants, and there is no reason why they cannot proceed with service against all fourteen simultaneously.

16

at service, and the Court finds their argument meritless in the circumstances of this case. It is well settled that defendants "ha[ve] no 'obligation to waive service of process.'" *Taylor v. Caplan*, No. 4:24-cv-1303-MTS, 2025 WL 26683, at *1 (E.D. Mo. Jan. 3, 2025) (quoting *Cooley v. Cornell Corr.*, 220 F.R.D. 171, 172 (D.R.I. 2004)); *see also* Order, *Trombetta v. Novocin*, No. 18 Civ. 993 (RA), Dkt. No. 126 at 1 (S.D.N.Y. Dec. 18, 2020) ("Defendants have no obligation to waive service of process"). Given that SME had no obligation to accept service on behalf of the Foreign Defendants, the Court fails to discern how Plaintiffs' simply asking SME to do so constitutes a reasonable attempt to effectuate service. If it did, motions for alternative service would become *de rigueur* in cases with foreign defendants. *See Topping*, 2014 WL 13118091, at *5 ("the logic advanced by Plaintiffs amounts to an argument that alternate service is warranted in virtually every case subject to the PSLRA that involves a foreign defendant").[6]

Accordingly, Plaintiffs have failed to satisfy the threshold requirements for invoking alternative service under Rule 4(f)(3). As a result, the Court need not reach the other contested issues addressed by Plaintiffs and SME in their briefing, namely: (1) whether service via email and social media messaging is permissible in the relevant foreign countries under the Hague Convention (Pl. Br. at 6-7; Opp. at 7); (2) whether Plaintiffs' proposed methods of alternative service comport with due

---

[6] The persuasiveness of Plaintiffs' argument is not improved by their intemperate and unwarranted rhetoric charging that by declining to accept service, SME is "play[ing] a shell game" and "engaging in bad-faith gamesmanship" intended to "postpone [Defendants] ultimate reckoning for committing mass copyright infringement." (Pl. Br. at 3, 5 n.1). *See Topping*, 2014 WL 13118091, at *5 (plaintiffs' allegations of defendant's "gall" in refusing to accept service "fail to move the Court").

17

process (Pl. Br. at 7-8; Opp. at 7-11); and (3) whether the relationships between SME and the Foreign Defendants are sufficiently close to justify a conclusion that SME has the ability to accept service on their behalf (Pl. Br. at 9-20; Opp. at 11-13).

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for alternative means of service pursuant to Fed. R. Civ. P. 4(f)(3) is **DENIED**.

**SO ORDERED.**

Dated:   New York, New York
         March 3, 2025

_____
The Honorable Gary Stein
United States Magistrate Judge