UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ultra International Music Publishing, LLC and Ultra Music Publishing Europe AG,<br><br>*Plaintiffs*,<br><br>v.<br><br>Sony Music Entertainment, AWAL Recordings Ltd., Ultra Records, LLC, 4ZA Music Ltd., Room Two Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony Music Entertainment Sweden AB, Sony Music Entertainment Switzerland GmbH, and Four Music Productions GmbH,<br><br>       *Defendants*. | Case No. 1:24-cv-09149<br><br><br>JURY TRIAL DEMANDED |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiffs Ultra International Music Publishing, LLC and Ultra Music Publishing Europe

AG (collectively, "Plaintiffs" or the "Ultra Plaintiffs"), by and through their undersigned

attorneys, for their First Amended Complaint (the "Complaint") against Sony Music

Entertainment, AWAL Recordings Ltd., Ultra Records, LLC, 4ZA Music Ltd., Room Two

Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony

Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment

UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony

Music Entertainment Sweden AB, Sony Music Entertainment Switzerland GmbH, and Four

Music Productions GmbH (collectively, "Defendants," or the "Sony Defendants"), allege upon personal knowledge as to their own acts, and upon information and belief as to the acts of others, as set forth below.

## PRELIMINARY STATEMENT

1.    This case is about an international music-industry giant—Sony Music—that refuses to follow the law regarding copyrights and contracts in its dealings with Plaintiffs.[1] Instead of complying with its legal obligations, Sony Music has resorted to false smears of the Plaintiffs, mischaracterizations of this lawsuit, and other distractions.  Most recently, Sony Music has misrepresented this lawsuit as a hasty "revenge" tactic that purportedly was filed by Plaintiffs in response to a trademark dispute between the parties.  Nothing could be further from the truth.  This is a **copyright** lawsuit that does not involve trademarks or any sort of "revenge." It was filed to protect Plaintiffs' songwriters and copyrights.  This lawsuit is the inevitable result of Sony Music's unabated, massive, ongoing, and willful infringements of Plaintiffs' copyrights for **more than two years**.  The allegations in this Complaint are substantiated by a voluminous evidentiary record of Sony Music's unlawful acts which Plaintiffs have carefully and meticulously collected.

2.    Try as it might, Sony Music cannot escape the following incontrovertible facts:

- By its own admission, Sony Music has not paid the Ultra Plaintiffs' songwriters the monies that an audit determined they are owed.  The Ultra Plaintiffs repeatedly demanded these amounts be paid, but Sony Music ignored these demands.

---

[1] As explained below, Sony's worldwide music business is operated as a single global enterprise that is run out of New York, New York and is referred to by the generic name "Sony Music."

- One of the fundamental roles of a music publisher is to ensure its songwriters are paid.  In fulfillment of this role, the Ultra Plaintiffs informed Sony Music on January 19, 2023, that they will not grant licenses to Sony Music on a going-forward basis until the audit issues are resolved.

- Thereafter, the Ultra Plaintiffs repeatedly asked Sony Music, in multiple letters, over the course of two years, to stop infringing their copyrights.  However, Sony Music rebuffed these clear and unequivocal requests.  Sony Music continued—and to this date continues—to exploit unlicensed recordings that infringe Plaintiffs' copyrights.  Sony Music's ongoing and unabated infringements left Plaintiffs with no choice but to file this lawsuit.

- For many months, the Ultra Plaintiffs have repeatedly requested that Sony Music provide them with any licenses that Sony Music claims to have for the infringing works at issue in this case.  If any licenses existed, it would be easy for Sony to provide them.  However, Sony Music has failed to provide any license whatsoever for any of the one-hundred-plus works at issue in this lawsuit.  Clearly, then, the works at issue are unlicensed, and therefore they infringe Plaintiffs' copyrights.

3.    In this lawsuit, the Ultra Plaintiffs will establish that Sony Music is **not** above the law.  The Ultra Plaintiffs will hold Sony Music accountable for its copyright infringements and other harms it has caused Plaintiffs.

## SUMMARY OF THE ACTION

4.      The Ultra Plaintiffs are music publishing companies that own and exploit the

copyrights in over 50,000 musical compositions (the "Ultra Compositions").[2]  The Ultra

Plaintiffs are widely acknowledged as being among the world's leading independent music

publishers, having enjoyed almost two decades of commercial and critical acclaim.  The Ultra

Compositions have been recorded by superstar artists including Drake, Post Malone, Ed Sheeran,

Madonna, Chris Brown, Kanye West, Rihanna, Katy Perry, Migos, Future, Gucci Mane, Kygo,

Young Thug, Gunna, Cardi B, Nicki Minaj, and many others.  The Ultra Compositions appear on

hundreds of Gold, Platinum, and Multi-Platinum albums and singles.  The Ultra Plaintiffs'

songwriters have been nominated for over 100 Grammy Awards, and they have won multiple

Grammy Awards.

5.      Sony's worldwide music business (in all countries other than Japan) is operated as

a single global enterprise that is run out of New York, New York and is referred to by the generic

name "Sony Music."  Defendant Sony Music Entertainment ("SME") is a subsidiary of the

publicly traded Sony Group Corporation; in turn, each of the other Sony Defendants is a

subsidiary, or otherwise an affiliate, of Sony Music Entertainment.  The Sony Defendants are

record labels that release and otherwise exploit sound recordings.

---

[2] Musical compositions and sound recordings "are separate works with their own distinct copyrights."  *In re Cellco P'ship*, 663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009).  A musical composition consists of rhythm, harmony, and melody, can be notated in sheet music, and can be performed by any musical performer with sufficient skill.  *Rose v. Hewson*, No. 17-CV-1471, 2018 WL 626350, at *2 (S.D.N.Y. Jan. 30, 2018); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003), *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) *and aff'd*, 388 F.3d 1189 (9th Cir. 2004).  A sound recording captures "the sound produced by . . . [a particular] performer's rendition of" a musical composition.  *Newton*, 204 F. Supp. 2d at 1249-50.

6.      Sony Music's Global Digital Business Group is a division of SME.  The Global Digital Business Group serves as the international digital licensing agent for all the Defendants. In other words, the Global Digital Business Group licenses the other Sony Defendants' recordings—including the infringing recordings at issue in this lawsuit—to digital platforms for streaming and digital downloading by consumers in the United States.  SME charges fees to each of the other Sony Defendants to provide these licensing and digital distribution services.[3] Dennis Kooker is an officer and employee of SME, and he oversees all aspects of Sony Music's global digital business.  Mr. Kooker and the Global Digital Business Group operate out of SME's headquarters in New York, New York.  By using SME's Global Digital Business Group as their licensing agent, the Foreign Sony Defendants have purposely availed themselves of the privilege of conducting business in the State of New York.

7.      For years, the Ultra Plaintiffs have been engaged in an audit of Sony Music Entertainment and its affiliates to uncover the Sony Defendants' underpayment and non-payment of royalties to the Ultra Plaintiffs and their songwriters for the Ultra Compositions (the "Audit"). The Sony Defendants admitted the Audit uncovered "credit errors and miscalculations of payments" to the Ultra Plaintiffs and their songwriters.  The Sony Defendants wrongfully refused to pay the Ultra Plaintiffs and their songwriters the monies that the Audit revealed they are owed.

8.      Given the Sony Defendants' refusal to pay the Ultra Plaintiffs' songwriters what they are owed, to protect those songwriters, the Ultra Plaintiffs no longer grant licenses to the Sony Defendants for the Ultra Compositions.  The Sony Defendants know, and have known for years, that the Ultra Plaintiffs will not grant them licenses.

---

[3] Plaintiffs assert this allegation regarding licensing fees charged by the Global Digital Business Group upon information and belief, based upon the fundamental principles of transfer pricing.

9.       Despite their lack of licenses, the Sony Defendants engage in knowing, willful, and utterly inexcusable copyright infringement of the Ultra Compositions.  Among other infringing acts, the Sony Defendants upload unlicensed sound recordings of Ultra Compositions (the "Infringing Sony Recordings") to United States digital service providers for on-demand streaming by consumers in the United States.  Without authorization from Plaintiffs, the Sony Defendants also sell the Infringing Sony Recordings as digital downloads to consumers in the United States, among other configurations.  In further violation of Plaintiffs' rights in the Ultra Compositions, the Sony Defendants also wrongfully synchronize them in so-called "music videos" and "lyric videos" that are streamed by viewers in the United States.  Although the Ultra Plaintiffs have repeatedly demanded in writing that the Sony Defendants cease and desist from their infringing activities, the Sony Defendants flatly and unequivocally refuse to do so.

10.      The Sony Defendants routinely present themselves to the public as purported champions of intellectual property rights and crusaders against piracy.  But the opposite is true. The Sony Defendants themselves are willfully committing blatant, ongoing, and massive piracy of the Ultra Plaintiffs' intellectual property on a global scale, without justification or remorse.[4]

11.      The Sony Defendants' continuing, unlawful, infringing activity has caused and continues to cause substantial and irreparable harm to Plaintiffs.  The Sony Defendants' unlawful

---

[4] Because the Sony Defendants recognize that they have no licenses for the Ultra Compositions, they wrongfully engaged in negotiations with multiple songwriters who are published by the Ultra Plaintiffs in an effort to obtain licenses directly from those songwriters.  However, as the Sony Defendants are aware, these songwriters are contractually prohibited from granting such licenses to the Sony Defendants.  This is because, under the Ultra Plaintiffs' contracts with these songwriters, the Ultra Plaintiffs have the exclusive right to issue such licenses.  Through their improper direct negotiations with these songwriters, the Sony Defendants tortiously interfered with the Ultra Plaintiffs' contractual relations.  However, because these songwriters did not have the ability to grant licenses—and the Sony Defendants were fully aware of same—any purported licenses that the Sony Defendants obtained from them are a nullity and invalid.

conduct enriches them at Plaintiffs' expense and to the detriment of their copyrighted musical compositions. Through their conduct, the Sony Defendants are liable for the direct infringement of Plaintiffs' exclusive rights under copyright law to reproduce, adapt, distribute, and publicly perform their works. Sony Music Entertainment is also liable for the infringing acts of its subsidiaries and affiliates, the other Sony Defendants, under the well-established doctrine of vicarious copyright infringement, because Sony Music Entertainment profits from, and has the right and ability to control, the infringing activities of the other Sony Defendants.

## JURISDICTION AND VENUE

12.    This is a civil action in which Plaintiffs seek damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*.

13.    This Court has original subject matter jurisdiction over Plaintiffs' copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.    This Court has supplemental jurisdiction over Plaintiffs' claim for tortious interference with contractual relations pursuant to 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Defendants because Sony Music Entertainment maintains its principal place of business within New York and because Defendants conduct systematic and continuous business in New York. All of the infringing recordings at issue in this action are being streamed and otherwise exploited in the United States on digital service platforms pursuant to licenses negotiated by SME's Global Digital Business Group, which serves as the licensing agent for the other Defendants.

16.    This Court also has personal jurisdiction over Defendants because Defendants have committed a substantial part of the acts of infringement alleged in the Complaint within this

district, and the harm from the infringement has been incurred, and continues to be incurred, in New York.

17.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and § 1400(a) because a substantial part of the acts of infringement, and other events and omissions complained of herein occur, or have occurred, in this district, and this is a district in which Defendants reside or may be found.

**THE PARTIES**

18.    Plaintiff Ultra International Music Publishing, LLC is a limited liability company organized under the laws of the State of New York, having its principal place of business at 137 West 25th Street, 10th Floor, New York, New York.

19.    Plaintiff Ultra Music Publishing Europe AG is a corporate entity known as an *Aktiengesellschaft* organized under the laws of Switzerland.

20.    Defendant Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.  Sony Music Entertainment is the parent company of the other Defendants.  Sony Music Entertainment releases musical recordings under record label names, which include, but are not limited to, RCA Records, Columbia Records, and Epic Records.

21.    Defendant AWAL Recordings Ltd. is a private limited company organized under the laws of the United Kingdom.

22.    Defendant Ultra Records, LLC is a limited liability company organized under the laws of the State of Delaware that maintains offices at 25 Madison Avenue, New York, New York.

23.     Defendant 4ZA Music Ltd. is a private limited company organized under the laws of the United Kingdom.

24.     Defendant Room Two Recordings Ltd. is a private limited company organized under the laws of the United Kingdom.

25.     Defendant B1 Recordings GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Germany.

26.     Defendant Sony Music Entertainment Australia Pty Ltd. is proprietary limited company organized under the laws of Australia.

27.     Defendant Sony Music Entertainment Germany GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Germany.  It releases musical recordings under record label names which include Sony Music Germany, Epic Records Germany, Columbia Records Germany, NITRON, Jive Germany, and Gold League.

28.     Defendant Secret Society is an entity of unknown corporate form that describes itself as "a joint venture with Jive Germany, a division of Sony Music Entertainment Germany GmbH."

29.     Defendant Liquid State is a joint venture of unknown corporate form; Sony Music Entertainment is a member of this joint venture.

30.     Defendant Sony Music Entertainment UK Ltd. is a private limited company organized under the laws of the United Kingdom.  It releases musical recordings under record label names which include Sony Music UK, RCA Records UK, Columbia Records UK, Robots + Humans, and Ministry of Sound Records.

31.    Defendant Sony Music Entertainment Italy s.p.a. is a corporate entity known as a *Società per azioni* organized under the laws of Italy.  It releases musical recordings under record label names which include Columbia Records Italy and Epic Records Italy.

32.    Defendant Sony Music Entertainment France S.A.S. is a corporate entity known as a *Société par actions simplifiée* organized under the laws of France.

33.    Defendant Sony Music Entertainment Sweden AB is a corporate entity known as an *Aktiebolag* organized under the laws of Sweden.

34.    Defendant Sony Music Entertainment Switzerland GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Switzerland.

35.    Defendant Four Music Productions GmbH is a corporate entity known as a *Gesellschaft mit beschränkter Haftung* organized under the laws of Germany.

## FACTS APPLICABLE TO ALL COUNTS

36.    For years, the Ultra Plaintiffs have been engaged in an audit of Sony Music affiliates to uncover the Sony Defendants' underpayment and non-payment of royalties to the Ultra Plaintiffs and their songwriters (the "Audit").  Sony Music has acknowledged that the Audit already uncovered "credit errors and miscalculations of payments" to the Ultra Plaintiffs and their songwriters.  Nonetheless, Sony Music has failed and refuses to pay the Ultra Plaintiffs and their songwriters the monies that the Audit reveals they are owed.

37.    As a result of Sony Music's inexcusable failure to properly pay royalties to the Ultra Plaintiffs and their songwriters, the Ultra Plaintiffs do not grant licenses to Sony Music to exploit the Ultra Compositions.[5]

---

[5] At one point in time, SME had a Digital Product License Agreement with UIMP dated July 15, 2011.  It provided SME with nonexclusive licenses for certain compositions published by UIMP.  However, the agreement was terminated by UIMP on or about September 28, 2016.

38.     Accordingly, the Sony Defendants lack the right or authority, without limitation, to: (a) reproduce sound recordings of the Ultra Compositions; (b) upload or otherwise distribute sound recordings of the Ultra Compositions to digital service providers for on-demand streaming; (c) sell recordings of the Ultra Compositions as digital downloads, vinyl records, compact discs, or in any other configuration; or (d) reproduce, distribute, upload, sell, or otherwise exploit music videos and lyric videos which contain synchronizations of the Ultra Compositions.  Despite their lack of licenses, the Sony Defendants engage in all these activities, thereby infringing the copyrights in the Ultra Compositions.[6]

39.     On January 19, 2023, the Ultra Plaintiffs sent a letter to Sony Music which reiterated to Sony Music that: (a) Defendants lack licenses to exploit sound recordings of the Ultra Compositions, and (b) the Sony Defendants' exploitation of the Ultra Compositions constitutes copyright infringement.

40.     The Ultra Plaintiffs' January 19, 2023 letter stated in part:

. . . [Sony Music] has repeatedly reproduced, synchronized, and distributed songs embodying Ultra Publishing's copyrighted musical compositions without a license, and in the process has treated those compositions as if they were free for the taking.  They are not . . .

[Sony Music] must immediately cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of **any** of Ultra Publishing's copyrighted musical compositions for which it does not have a license, and/or authorizing others to do the same.  Please confirm immediately that [Sony Music] has ceased all such infringing conduct and activities, and that it will immediately inform any and all

---

[6] SME has asserted that its conduct with respect to the Ultra Compositions is "entirely consistent with the licensing practices of every other leading record label . . . ."  Not so.  Responsible major record labels do not have a practice of ignoring years of cease-and-desist letters asserting claims of massive copyright infringement, as SME and the other Sony Defendants have done here.  Moreover, on at least two occasions, the Sony Defendants expressly requested a license for a particular Composition from Plaintiffs, and Plaintiffs denied the request.  Nonetheless, the Sony Defendants proceeded to release infringing recordings of these Compositions.  Again, this not the conduct of a responsible major record label.

third-party distributors that the continued distribution of those Ultra Publishing musical compositions constitute willful infringement.

(Emphasis in original.)  Unfortunately, Defendants rebuffed this demand.

41.     In their January 19, 2023 letter, the Ultra Plaintiffs further demanded that Sony Music "identify each copyrighted musical composition owned or controlled by Ultra Publishing that [Sony Music] has used or exploited without a license or authorized others to use or exploit . . ."  Sony Music also rebuffed this demand.

42.     Plaintiffs sent numerous follow-up letters to Sony Music in which Plaintiffs reiterated their demands that Defendants: (a) cease exploiting the Ultra Compositions; and (b) identify which Ultra Compositions have been exploited, and continue to be exploited, by Defendants.  These demands were rebuffed by Defendants.

43.     Plaintiffs also demanded that, to the extent Defendants claim to have license(s) that would permit them to exploit Ultra Compositions, Defendants provide such alleged license(s) to Plaintiffs.  Defendants also have failed to comply with this demand.

44.     To date, Defendants continue to willfully infringe Plaintiffs' copyrights in the Ultra Compositions.  These acts of infringement have included, but are not limited to, Defendants' reproduction and distribution of sound recordings of the Ultra Compositions; Defendants' uploading of unauthorized recordings of the Ultra Compositions for on-demand streaming; Defendants' sale of permanent digital downloads of those recordings; and Defendants' unauthorized synchronizations of the Ultra Compositions in music videos and lyric videos.

45.     Because Defendants refuse to take responsibility for—let alone cease—their misconduct, Plaintiffs have been forced to commence this litigation to enforce their rights and hold Defendants accountable.

46.    **Exhibit A** to this Complaint contains a list of certain Ultra Compositions which, notwithstanding Defendants' bad-faith failure and refusal to provide information regarding their exploitations, the Ultra Plaintiffs believe in good faith are being infringed by Defendants.  The Compositions on Exhibit A are the only infringed works that are the subject of this particular lawsuit.  For each infringed Composition, Exhibit A provides the following information: the title of the Composition; the recording artist who performed the Composition; the copyright registration number for the Composition; the effective copyright registration date for the Composition; the names(s) of the Defendant(s) who have infringed the Composition; acts of copyright infringement in the United States committed by the aforesaid Defendant(s)[7]; the names of Digital Service Providers operating the United States to which the infringing recording of the Composition was uploaded by the aforesaid Defendant(s) or their agents in the Digital Business Group[8]; the name of the Plaintiff who owns the copyright in the Composition (and whose copyright has been infringed); and the date of first infringement by the aforesaid Defendant(s).[9]

47.    This lawsuit is just the first of numerous copyright-infringement actions that the Ultra Plaintiffs intend to bring against Defendants.  As Plaintiffs' investigation of Defendants' wrongful conduct continues, the Ultra Plaintiffs intend to assert more copyright infringement claims—either by amending this Complaint or filing additional lawsuits—against Defendants for additional Ultra Compositions that Defendants are unlawfully exploiting without a license.

---

[7] Plaintiffs are continuing to investigate additional acts of infringement by Defendants of the Compositions set forth in Exhibit A.  Plaintiffs reserve the right to seek relief for any and all infringing acts by Defendants of these compositions.

[8] Each such upload constitutes a separate act of copyright infringement in the United States.

[9] Contrary to SME's specious assertion in an earlier court filing, Plaintiffs' entire catalog of more than 50,000 copyrighted musical compositions (other than the compositions on Exhibit A) is not the subject of any of the claims in this particular lawsuit.

## CLAIMS FOR RELIEF

## COUNT I – Direct Copyright Infringement

### (Against All Defendants)

48.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 47 as if fully set forth herein.

49.     Defendants have engaged, and continue to engage, in the unauthorized reproduction, adaptation, distribution, and public performance of various copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including those copyrighted works listed in Exhibit A.  The foregoing activity constitutes direct infringement by Defendants in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

50.     Each of the Defendants is liable for its role in the "distribution chain" at issue, including: (i) involvement in the creation of unauthorized infringing works; (ii) distributing unauthorized infringing works; (iii) purporting to license the public performance of unauthorized infringing works on streaming services; and (iv) creating and distributing infringing derivative works such as accompanying music videos and lyric videos.

51.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

52.     Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

53.    Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive rights under copyright.

## COUNT II – Vicarious Copyright Infringement

### (Against Sony Music Entertainment)

54.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 53 as if fully set forth herein.

55.    Defendants AWAL Recordings Ltd., Ultra Records, LLC, 4ZA Music Ltd., Room Two Recordings Ltd., B1 Recordings GmbH, Sony Music Entertainment Australia Pty Ltd., Sony Music Entertainment Germany GmbH, Secret Society, Liquid State, Sony Music Entertainment UK Ltd., Sony Music Entertainment Italy s.p.a., Sony Music Entertainment France S.A.S., Sony Music Entertainment Sweden AB, Sony Music Entertainment Switzerland GmbH, and Four Music Productions GmbH (the "SME Subsidiaries") have reproduced, distributed, adapted, and publicly performed, and continue to reproduce, distribute, adapt, and publicly perform, without authorization, the copyrighted works for which Plaintiffs are the legal or beneficial copyright owners that are set forth on lines 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 29, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 62, 63, 64, 65, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 90, 91, 92, 93, 94, 96, 97, 99, 100, and 101 of Exhibit A. The foregoing activity constitutes direct infringement by the SME Subsidiaries in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

56.    Defendant Sony Music Entertainment is liable as a vicarious copyright infringer for the direct infringements of the SME Subsidiaries set forth on lines 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 29, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 62, 63, 64, 65, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 90, 91, 92, 93, 94, 96, 97, 99, 100, and 101 of Exhibit A.

57.    Sony Music Entertainment has the right and ability to supervise and control these infringing activities by the SME Subsidiaries for the following reasons: Sony Music's Global Digital Business Group is a division of Sony Music Entertainment.  The Global Digital Business Group licenses and uploads the Foreign Sony Defendants' recordings—including the infringing recordings at issue in this lawsuit—to digital platforms for streaming and digital downloading by consumers in the United States.  Given Sony Music Entertainment's function as the licensing agent for the SME Subsidiaries, Sony Music Entertainment has the right and ability to refuse to license and upload the infringing works at issue in this case to third-party platforms.  Simply put, Sony Music Entertainment has knowledge of, and substantial, continuing involvement with, the infringing acts of the SME Subsidiaries.

58.    Sony Music Entertainment also has derived, and continues to derive, direct and substantial financial benefits from the infringement of Plaintiffs' copyrighted works occurring through the acts of the SME Subsidiaries.  This is because Sony Music Entertainment charges fees to SME Subsidiaries to provide licensing and digital distribution services for recordings which include the infringing works at issue in this lawsuit.

59.    As a result, Sony Music Entertainment is vicariously liable for the unlawful infringement of Plaintiffs' copyrighted works by the SME Subsidiaries, including those listed in

Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

60.    The infringement of Plaintiffs' rights in each of their copyrighted works constitutes a separate and distinct act of infringement.

61.    Sony Music Entertainment's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

62.    As a direct and proximate result of Sony Music Entertainment's infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

63.    Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Sony Music Entertainment's profits from infringement, as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

64.    Sony Music Entertainment's conduct is causing, and unless enjoined by this Court, will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive rights under copyright.

**COUNT III – Tortious Interference with Contractual Relations**

**(Against Sony Music Entertainment, Sony Music Entertainment France S.A.S.,**

**and Sony Music Entertainment Germany GmbH, collectively the "Interfering Sony**

**Defendants")**

65.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 64 as if fully set forth herein.

66.    Because the Interfering Sony Defendants recognize that they have no licenses for the Ultra Compositions, they wrongfully engaged in direct negotiations with certain songwriters who are published by the Ultra Plaintiffs in an unavailing attempt to obtain licenses directly from those songwriters for compositions they wrote.

67.    Plaintiffs are informed and believe that songwriters whom the Interfering Sony Defendants improperly contacted for this purpose (hereafter, the "Songwriters") include the individuals who wrote the musical compositions that were recorded by the artists professionally known as Chinedu Okoli, Alexandra Mills, Jenson Vaughan and Allison Crystal.

68.    At all relevant times, the Interfering Sony Defendants have known that the Songwriters were contractually prohibited from granting such licenses to the Interfering Sony Defendants.  Specifically, the Interfering Sony Defendants knew that, under the Ultra Plaintiffs' contracts with the Songwriters (the "Publishing Agreements"), the Ultra Plaintiffs have the exclusive right to issue such licenses.[10]  Thus, any alleged licenses which the Interfering Sony Defendants entered into with these Songwriters are invalid, and these alleged licenses do not exculpate the Sony Defendants from Plaintiffs' copyright infringement claims.

---

[10] Chinedu Okoli's Publishing Agreement is with UIMP.  Alexandra Mills's Publishing Agreement is with UMPE.  Jenson Vaughan's Publishing Agreement is with UIMP.  Allison Crystal's Publishing Agreement is with UIMP.

69.     At all relevant times, the Interfering Sony Defendants have known that each of these Publishing Agreements contains a representation and warranty by the writer that he or she shall not enter into any agreement or perform any act which diminishes, or is inconsistent with, the rights granted to Publisher under the publishing agreement (hereafter, the "Representation and Warranty").

70.     Through their improper direct negotiations with songwriters, the Interfering Sony Defendants tortiously interfered with the Ultra Plaintiffs' contractual relations by inducing the Songwriters to breach the Representation and Warranty in their contracts with the Ultra Plaintiffs.  But for the Interfering Sony Defendants' wrongful actions, the Songwriters would not be in breach of their Representation and Warranty.

71.     At all relevant times, the Interfering Sony Defendants have known that each of these Publishing Agreements contains a contractual obligation by the Songwriter to indemnify Plaintiffs against, *inter alia*, any loss or damage caused by the Songwriter's breach of the Representation and Warranty (the "Indemnity Obligation").  The Songwriters have not complied with their Indemnity Obligations, thereby further breaching their duties under the Publishing Agreements.  But for the Interfering Sony Defendants' wrongful acts, the Songwriters would not be in breach of their Indemnity Obligations.

72.     The Ultra Plaintiffs have suffered damages as a result of the foregoing in the form of lost licensing revenues and legal fees for which the Ultra Plaintiffs have not been indemnified. The amount of these damages will be determined at summary judgment and/or trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment from this Court against Defendants as follows:

a.       For a declaration that Defendants have willfully infringed musical works owned and/or controlled by Plaintiffs in violation of the Copyright Act;

b.       For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Defendants' willful violations of Plaintiffs' rights under the Copyright Act; or, in the alternative, at Plaintiffs' election, Plaintiffs' actual damages pursuant to 17 U.S.C. § 504(b), including Defendants' profits from infringement, in an amount to be proven at trial; in all events, in an amount no less than $20,000,000 (Twenty Million Dollars);

c.       For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiffs' copyrights and/or other rights in the musical works, including a permanent injunction requiring that Defendants and their officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing or materially contributing to or participating in the infringement of any of Plaintiffs' exclusive copyright rights, including without limitation in the musical works listed in Exhibit A;

d.       For the disgorgement of all profits received by Defendants for the unlawful diversion of earnings from Plaintiffs' musical works for which Plaintiffs have exclusive rights and have provided no licenses to Defendants;

e.       For an award of damages on Plaintiffs' claim for tortious interference with contract, in an amount to be determined at trial;

f.       For an award of Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

g.      For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

h.      For such other relief and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims and issues that are so triable.


Dated: New York, New York
       March 10, 2025

                              Respectfully submitted,

                              */s/ Jeffrey M. Movit*
                              Jeffrey M. Movit

                              CHAUDHRYLAW PLLC
                              147 West 25th Street, 12th Floor
                              New York, NY 10001
                              Tel: (212) 785-5550
                              jeff@chaudhrylaw.com